ARNOLD *et al.* v. CITY OF TULSA *et al.*

No. 2525.   Opinion Filed May 13, 1913.

(132 Pac. 669.)

1. MUNICIPAL CORPORATIONS—Street Improvements—Assessment—Validity. Where drainage work is not specified in a resolution for paving required by article 9, sec. 1, of the charter of the city of Tulsa, the board of commissioners acquires no jurisdiction to make such improvement, and the same cannot be collected as a part of the assessment for the paving.

2. SAME—Items of Cost. Where article 9, sec. 1, of the charter of the city of Tulsa provides that upon the passage of a resolution for street improvement it shall be the duty of the city engineer to prepare specifications for such improvements embracing the different matters or different plans or methods under which said improvements are to be constructed, which was done, and where it appears that said engineer was not a salaried officer of the city, held, that an item of $335.14 for the engineer's charge is a proper item to be assessed upon the abutting property as a part of the cost of such improvement.

3. SAME—Fill at Intersection—Property Assessable. In a suit to enjoin the collection of a special assessment to pay the cost of paving a certain street in the city of Tulsa, the item of $650 for making a fill at a street intersection is properly chargeable upon the same property on which other expenses of such improvement are assessed.

4. SAME—Special Assessment—Injunction—Prematurity. In a suit to enjoin the collection of a special assessment to pay the cost of paving a certain street in the city of Tulsa, where it appears from the petition that the amount of such assessment had been ascertained, notice thereof given to the property owners who had filed their written objections thereto pursuant to article 9, section 7, of the charter, but who had failed to secure any relief from the matters complained of, held, that a demurrer sustained thereto on the ground that the same disclosed the suit to have been prematurely brought, is error. Held, further, that no tender was necessary of that part of the assessment which on the face of the petition plaintiffs conceded to be valid.

(Syllabus by the Court.)

*Error from District Court, Tulsa County;*
*L. M. Poe, Judge.*

Action by John H. Arnold and others against the City of Tulsa and others. Judgment for defendants, and plaintiffs bring error. Reversed, with directions.

*J. J. Henderson,* for plaintiffs in error.
*John R. Ramsey,* for City of Tulsa.
*Kellough & Dillard,* for Eureka Const. Co.

TURNER, J.   From a judgment of the district court of Tulsa county rendered and entered March 25, 1911, sustaining a demurrer to their petition interposed by the defendants city of Tulsa and others and the intervenor, the Eureka Construction Company, and dissolving their temporary restraining order enjoining the city from collecting a special assessment sought to be imposed on certain lots belonging to them in said city, plaintiffs in error, plaintiffs below, bring the case here.   They assign that the court erred in sustaining said demurrer.   Plaintiffs, after alleging the corporate existence of the city and that certain persons, naming them, constitute the board of commissioners with power to legislate therefor under its charter, substantially state that the plaintiffs are the owners in fee of certain lots and parcels of ground in Lindsay's addition to said city abutting upon South Guthrie avenue; that about August, 1909, the city entered into a contract with the Eureka Construction Company to pave said avenue, which has been done, and an estimate of the different items of cost therefor made to the city; that among these items is one "* * * for $537.14 for a drain which includes 496 feet 12-inch pipe, 40 cents per foot, $198.40; 80 lineal feet 15-inch pipe, 56 cents per foot, $44.80; 325.6 cubic yards excavating dirt, 35 cents, $113.94; 6 catch-basins, $20 each, $120; 2 manholes, $30 each, $60—total, $537.14; that said drain extends south on Guthrie avenue from Eleventh street to the south line of Twelfth street; that no resolution for said drain improvements was ever passed by the defendants, and no notice that such improvements would ever be made and charged to plaintiffs was ever given plaintiffs as required by law; that

the plaintiffs had no knowledge or notice, either actual or constructive, that said improvements would be made and taxed against the plaintiffs and their said property; that plaintiffs did not make any request of defendants for said improvements, and had no opportunity to be heard on said matter of improvements; that said improvements are not incident. or a necessary part of the improvement of street paving; that such drain improvements are a separate and distinct class of improvements from that of paving, and require a resolution of the legislative body of said defendant city, and due notice thereof to plaintiffs, and an opportunity given plaintiffs to be heard thereon before contracting for same; that by reason that no resolution having been passed for said drain as aforesaid, and no notice given plaintiffs as aforesaid, the said acts of the defendants were illegal, void, and wholly unauthorized, and said sum as aforesaid for said drain should not be made a tax and charged against the plaintiff's and a lien against plaintiffs' property described herein."

Apart from any question of notice to assess the costs of proposed improvements, the petition, construed with a view to substantial justice, in effect charges that the resolution, while evidencing the necessity of paving and the intention of the city to pave, was silent as to the necessity of constructing this drain and the intention of the city so to do and, hence, plaintiffs are not liable for the cost of the drain, which is included in the assessment about to be levied. As this demurrer admits the truth of the allegation, "that said improvements are not incident or a necessary part of the improvement of street paving, that such drain improvements is a separate and distinct class of improvements from that of paving * * *" and the city charter provides:

"When the board of commissioners shall deem it necessary to grade, pave, macadamize, gutter, drain or otherwise improve any street, avenue or alley or any part thereof, within the limits of the city for which a special tax is to be levied, as herein provided, said board shall by resolution declare such

work or improvement necessary to be done, which resolution shall be adopted by a majority vote of the board, and the passage of such resolution shall be conclusive of the public necessity therefor, and no notice of such action by the board shall be requisite to its validity. Such resolution shall, in general terms, set forth the nature and extent of the improvement or improvements to be made, the section or sections of any public street, avenue or alley to be improved, the material or materials with which the improvements are to be constructed and the method or methods under which the costs of such improvements are to be paid"

—we are of opinion that, as this drainage work was not specified in the resolution for paving, the same cannot be collected as a part of the assessment sought to be restrained. This for the reason stated in the first section of *Patridge v. Lucas,* 99 Cal. 519, 33 Pac. 1082, which reads:

"The passage and publication of a resolution of intention to do street work are acts by which the board acquires jurisdiction to make such improvements as they describe in the resolution, and they cannot lawfully cause work other than that which is so described to be performed, or enter into any valid contract therefor."

In that case the court said:

"It is well settled that 'the passage and publication of the resolution of intention are acts by which the board acquires jurisdiction; and by those acts they acquire jurisdiction to make only such improvements as they described in the resolution, and they cannot, therefore, lawfully cause work other than that which is described to be performed.' *Beaudry v. Valdez,* 32 Cal. 276; *Himmelmann v. Satterlee,* 50 Cal. 68. * * * It is plain that the work described in the resolution of intention did not include the construction of rock gutterways in the streets to be macadamized, and therefore the board of trustees did not, under the rule above stated, acquire jurisdiction to contract for such gutterways, and the contract as to these is void."

*Mason v. City of Sioux Falls,* 2 S. D. 640, 51 N. W. 770, 39 Am. St. Rep. 802, was an action to enjoin defendant from selling certain real estate of plaintiff charged with a special tax assessment for grading and curbing Prairie ave-

nue in said city. There was judgment for plaintiff and defendant appealed. One of plaintiff's grounds for annulling the special assessment proceeding alleged in her complaint was that the cost of curbing said avenue was included in the assessment for which the property owners were not liable, as the curbing was not specified in the resolution for grading. The court said:

"We are of the opinion that the court properly sustained plaintiff's objection to this evidence. The resolution under which the grading in this case was done is as follows: 'Resolved, that it is necessary that Prairie avenue, between Fourth and Twelfth streets, in said city of Sioux Falls, be graded and worked to the established grade of said avenue.' It will be noticed that curbing is not mentioned in the resolution, and the city cannot, therefore, hold the property owners or the property liable for the cost of the curbing. To render property subject to the cost of street improvements, the requirements of the statute must be strictly complied with."

The doctrine of this case is adhered to in *Street & Improvement Co. v. Taylor,* 138 Cal. 364, 71 Pac. 446.

In *Beaudry v. Valdez, supra,* in the syllabus it is said:

"A contract in Oakland to improve a public street is valid only for such improvements as are named in the resolution of intention to improve, passed by the common council. If such resolution declares only an intention to macadamize, the contract should not be let for both macadamizing and curbing the sidewalk. If the contract to improve a street in Oakland includes a kind of work not named in the resolution of intention, the contractor can recover for such work as is named in the resolution, if it can be separated from the other and estimated."

Hamilton on the Law of Special Assessments, sec. 345, says:

"A resolution * * * to macadamize a street does not authorize a contract for the construction of stone gutters; nor curbing; it must in general state specifically the work to be done, or the owners will be liable only for the cost of such improvements as are specifically designated in the resolution regularly adopted and published, and not then if the authorized and unauthorized portions cannot be separated. * * *"

From which, it being admitted that this drainage was not incident to or a necessary part of the improvement of street pavement and was omitted from the resolution to pave, it follows that the court erred in sustaining the demurrer to the fifth paragraph of plaintiff's petition.

We decline to further discuss the question, as we are asked to do, upon the presumption that the resolution for paving "set forth the nature and extent of the improvements," as required by the charter, for the reason that we have just held the allegations of the petition to negative any such presumption and state the fact to be "that no resolution for said drain improvements was ever passed."

Among the various items of costs complained of as improperly included in the assessment is one for $335.14 for engineer's charges. It is alleged in the petition that this item is mentioned in the paving contract wherein it is stipulated between the paving company and the city that said company will pay the same in the first instance and be reimbursed therefor by the city. Although article 9, sec. 1, of the charter makes it the duty of the city engineer upon the passage of the declaratory resolution to prepare specifications of the proposed improvements, we can find no provision in the charter creating that office, much less do we find him to be a salaried officer of the city. That being true his compensation for the work done is a proper item to be included in the cost of the assessment.

In *Longworth v. Cincinnati*, 34 Ohio St. 101, the inquiry was: "Did the court below err in holding that the charge for engineering was improperly included in the assessment?" The court said:

"Notwithstanding section 544 does provide that the cost of the improvement of a street includes 'the expense of the preliminary and other surveys,' yet we think that this has reference only to the cases in which the engineer doing the work was employed for that special purpose, and does not apply to work done by engineers appointed for a definite period of time, at fixed salaries, under the provisions of

section 4 of the Act of March 17, 1876 (73 Ohio Laws, 44). The finding of fact shows that the work was done by the chief engineer of the board of public works and his assistants, all of whom were in the employ of the city, at fixed salaries, and paid out of the general fund of the city; and also shows the manner of arriving at the amount that was charged and assessed for this improvement. It is sufficient to say, that when the salaries of these engineers were paid from the general funds of the city, as required by law; that was the end of it, unless there was some law expressly authorizing the charge and assessment that was made in this case, for the purpose of reimbursing the city for the amount so paid; and, inasmuch as there is no such law, the courts did not err in holding that the charge was improperly included in the assessment."

And in the syllabus:

"Where the surveying and engineering of such improvement were performed by the chief engineer of the city and his assistants, who were officers appointed for a definite period, at a fixed salary, which the law required to be paid out of the general fund of the city, the reasonable cost to the city, of such surveying and engineering, cannot be ascertained and assessed upon the abutting property, as a necessary expenditure for the improvement."

Another such item of cost is a charge of $650 "for making a fill at the intersection of Eleventh street and South Guthrie avenue, that said fill is at the said intersection of said Eleventh street and Guthrie avenue, that by said fill Eleventh street is opened up so as to furnish a way from Eleventh street on to Guthrie avenue at this point. That said fill is an extraordinary fill. That the city of Tulsa and the public at large receive great benefit by reason of said fill; that the plaintiffs do not receive any special benefits therefrom, greater than that in common with other citizens of the community. That it is the duty of said defendant city of Tulsa to maintain a way over and across said branch where said fill is and to open and maintain an opening from Eleventh street on to Guthrie avenue, at said point to fill at the general cost of the public. That the defendant city of Tulsa,

by its said officers, is seeking to apportion and charge to the individual property owners to the center of the blocks in either direction from said fill the said sum of $650 for said fill, that such a charge against said individual property owners is unjust, illegal, and not according to law, and is not equitable, that said fill and said charge should be borne by the city and the taxpayers generally." Although this is one item in the cost of grading, we think it was properly included in the cost of paving.

In *Dashiell v. Mayor, etc., of Baltimore,* 45 Md. at page 629, the court said:

"The next ground of objection is, that at the time this work was done, the city had no power to include in the tax for paving the cost of grading the street, and assess that upon the owners of adjacent property. The Act of 1870 expressly confers the power to pave an unpaved street and to assess the expenses thereof upon the owners of adjacent lots. * * * It is obvious that paving a street which has never before been paved involves the necessity of first grading it in order that the pavement may be properly laid, and so the courts held wherever the question has been raised. The authorities are collected in Dillon on Municipal Corporations, sec. 636, where it is said: 'The power to pave a street includes the power to furnish and do all that is necessary, usual, or fit for paving; and on this ground it has been held that the expense of grading a street preparatory to paving is incident to paving, and the expense properly included in the assessment."

See, also, *State v. Council of Elizabeth,* 30 N. J. Law, 365.

In effect, the allegation of the pleader is that no portion of the expense of the fill made at the intersection of Eleventh street should be assessed against the abutting owners, but should be assessed against the city. This was, in effect, the contention of the property owner in *Creighton v. Scott,* 14 Ohio St. 438. That was a suit by the contractor to enforce the collection of an assessment upon certain lots of defendant to defray the expense of grading and improving a certain street in Toledo. There his second contention was:

"That no portion of the expense of the work done in the squares formed by the intersection of the streets should have been charged upon the property bounding on Michigan street; or, if any, not more than half."

In treating of which the court said:

"As to the second proposition, the squares at the intersections form, in common, parts of both streets, and are to be improved as the other portions. It is the duty of the city council to determine to which of the streets, thus occupying ground in common, the expense of improvement, in any given case, is to be appropriated; or whether to both. If the necessity and object are for the improvement of only one of the streets, and in making the improvement across the square the other is incidentally affected, we think the whole expense may be assessed upon the same property on which the other expenses of the improvement are assessed."

There is no merit in the contention that the court did right in sustaining the demurrer to the petition on the ground that it disclosed the suit to have been prematurely brought under Comp. Laws 1909, sec. 5771 (Rev. Laws 1910, sec. 4881), which reads:

"An injunction may be granted to enjoin the illegal levy of any tax, charge or assessment, or the collection of any illegal tax, charge or assessment, or any proceeding to enforce the same; and any number of persons whose property is affected by a tax or assessment so levied may unite in the petition filed to obtain such injunction."

Paragraph 8 of the petition reads:

"* * * That the defendants have had an appraisement and apportionment made of said costs herein complained of together with other costs of said paving, that said commission so appraising and apportioning. has reported their said findings to the defendants; that defendants have given plaintiffs notice of said apportionments, and the amounts apportioned against each individual. That plaintiffs did, within due time allowed by law, file their written objections to the matters and things herein complained of, and have at divers times, met with the defendants in an effort to effect a compromise agreement, but the defendants refuse to make any

change in said apportionment or to give plaintiffs any relief from the matters complained of."

Article 9, sec. 7, of the charter, among other things, provides that after the contract has been executed and approved by the board it shall be the duty of the city engineer at once to prepare a written statement which, among other things, shall contain "an estimate of the total cost of such improvements, the proportion and amount of such costs to be assessed against abutting property, the amount per front foot to be assessed against abutting property, and the total estimated amount to be assessed against each owner." That when said statement has been approved by the board and it shall have determined to assess the cost of such improvements against such property it shall so declare by resolution, directing notice thereof to be given unto the owners in a certain manner therein set forth. The charter then provides:

"The notice aforesaid shall state the time of the hearing hereinafter provided for, the general character of the improvements determined upon by the board, the street or part thereof to be improved and the proportionate part and amount per foot of the total cost of the proposed improvement, which it is contemplated shall be assessed against the property and the owners thereof abutting upon such street or alley to be improved."

That at the time parties interested may appear and have a hearing before the board upon objections filed by them in writing. The charter further provides:

"When the hearing above mentioned has been concluded the board shall by ordinance assess against the several owners of property, and against their property abutting upon the public street or alley, such proportionate part of the costs of said improvement as by such board may have been adjudged against such respective owners and their property."

From all of which it will appear that the amount of plaintiffs' assessments had been ascertained which the board had determined to levy; that notice thereof was given to them and protest duly entered, which availed them nothing. All that remained to be done by the city was to actually assess the property by passing an assessing ordinance and thus

cloud plaintiffs' title when it was met by this suit to restrain its passage.  As their assessments had been ascertained and notice thereof given to the property owners the same was not prematurely brought.  In *Andrews v. Love,* 50 Kan. 701, 31 Pac. 1094, the court, in the syllabus, said:

"A proceeding by injunction to restrain the collection of special assessments to pay the cost of creating a system of sewerage in a city of the second class is not prematurely brought, when it appears that the amount of such assessments has been ascertained, and notice thereof given to the property owners"

—citing *City of Topeka v. Gage,* 44 Kan. 87, 24 Pac. 82; *Wahlgren v. Kansas City,* 42 Kan. 243, 21 Pac. 1068.

There is no merit in the contention that plaintiffs, as a condition precedent to relief, should have pleaded a tender of that part of the assessment which on the face of their petition is conceded to be valid.  This for the reason that as no part of the tax was actually assessed against their property, and of course not due, it would be inequitable to so hold and thereby accelerate the payment of any part of the proposed tax.  Nor is there merit in the remaining contentions, for the reason that paragraph 5 states a cause of action. *Cockrell et al. v. Schmitt,* 20 Okla. 207, 94 Pac. 521, 129 Am. St. Rep. 737; *Emmerson v. Botkin,* 26 Okla. 218, 109 Pac. 531, 29 L. R. A. (N. S.) 786, 138 Am. St. Rep. 953.

The judgment of the trial court is reversed with directions to proceed in accordance with this opinion.

All the Justices concur.