## PARTEE v. CLEVELAND TRINIDAD PAVING CO.

No. 8851—Opinion Filed May 7, 1918.

(172 Pac. 945.)

**Municipal Corporations — Public Improvement—Tax Bill—Injunction.**

When a city acquires jurisdiction by the proper preliminary proceedings to pave certain of its streets, the owner of property within the improvement district who sees such improvements made with the knowledge that the city authorities intend to levy and collect a special tax against his property, and that those who do such work cannot be compensated in any other way, and fails to prosecute a suit testing the validity of the ordinance creating the paving district or an assessment made thereunder within the time provided by the charter of the city enacting said ordinance, cannot thereafter maintain an action to enjoin the collection of the assessment against his property on the ground of alleged irregularities."

(Syllabus by Hooker, C.)

Error from District Court, Tulsa County; Conn Linn, Judge.

Action by the Cleveland Trinidad Paving Company against L. P. Partee. Judgment for plaintiff, and defendant brings error. Affirmed.

G. W. Hutchins and Gregg & Martin, for plaintiff in error.

Randolph, Haver & Shirk, for defendant in error.

Opinion by HOOKER, C. This action was brought by the defendant in error to foreclose a certain tax bill issued by the city of Tulsa to it, same being designated as special tax bill No. 2190, in street improvement district No. 52-A, and alleged to be a first and prior lien against all that part of lot 1 in block 54 lying westerly of the westerly line of the right of way of the Missouri, Kansas & Texas Railway in said city.

The answer of the plaintiff in error sets up two defenses against this action, namely: (1) That the resolution providing for the improvement in said district and the ordinance passed in pursuance thereof included not only the grading, curbing, paving and guttering of the street, but included as well the construction of the catch-basins at the intersections of the streets and the storm sewer drainage, which under the law the plaintiff in error contends cannot be combined in one assessment, but must be made under separate ordinances, and by a separate and distinct proceeding as provided by the provisions of the charter of the city of Tulsa and the statutes of the state of Oklahoma; (2) that all of the improvements placed in Archer street under the resolution and ordinance involved here, consisting of grading, curbing, and guttering, were made upon that portion of Archer street and Greenwood avenue occupied by the right of way of the said railroad company where the same crosses Archer street, with the exception of a small portion of the intersection formed by the crossing of Archer street and Greenwood avenue, and that all of the cost of said grading, curbing, guttering, and paving of the right of way of said company, which right of way was 100 feet wide and entirely across Archer street, with the exception of 2 feet on the outside of the track of said railroad company crossing said street, was in fact taxed against the property in the abutting blocks, and as a result thereof one-half of the cost of making said improvements was taxed against the north half of block 54 in said city, which included the fractional part of lot 1 owned by the plaintiff in error.

The record herein discloses that Archer street runs east and west and Greenwood avenue north and south; that blocks 46 and 54 are west of Greenwood avenue; and that said blocks are separated by Archer street. Lot 1 in block 54 fronts north on Archer street 140 feet and east on Greenwood avenue 100 feet. The right of way of said company as found by the court takes a triangular piece of ground out of the northeast corner of lot 1 of about 81 feet facing on Greenwood avenue and 75 feet facing north on Archer street .

It appears further from the evidence that the improvements in district No. 52-A involved in this action commenced at the westerly line of the right of way of the said company and extended easterly on Archer street, and it is contended by the plaintiff in error that his property involved here, that is, that part of lot 1 in block 54 not occupied by the right of way of said company, does not abut any of the improvements made in said district No. 52-A, but it is con-

ceded by him that his property is liable for a certain part of said improvements caused by the improvements at the intersection of Greenwood avenue and Archer street for catch-basins and storm sewer drainage.

Upon the trial of this cause in the court below the court made the following findings of fact:

"That all of that portion of Archer street lying west of the center of the alley running north and south through blocks 54 and 46 of the city of Tulsa up to the intersection of the west line of the right of way of the Missouri, Kansas & Texas Railway had been paved under a prior ordinance, and its portion of the cost thereof assessed against lot 1 in block 54, belonging to the defendant; that of the paving done under the ordinance providing for the improvement of Archer street by paving the unpaved portion of said street from the east intersection of Archer street and Greenwood avenue westerly to the center of the alley running north and south through blocks 54 and 46 of the city of Tulsa, and under which tax certificate No. 2190 was issued, 100 feet of the said paving on said Archer street was included within the right of way of the Missouri, Kansas & Texas Railway Company, and should under the city charter have been taxed and assessed against said railroad company.

"The court further finds from the proof offered that a portion of the improvements of the intersection formed by the crossing of Archer street and Greenwood avenue were properly taxable against the property in the northeast quarter of block 54, and that some portion of the expense of said improvement of said intersection was properly taxable against lot 1, the property of the defendant.

"The court further finds that proper notice was given of the making of said improvements and the apportionment of the costs; that the defendant, L. P. Partee, appeared and filed his protest with the city commissioners of the city of Tulsa, protesting against the apportionment of the cost of said improvements made by said city and assessed against his property, being lot 1 in block 54 of the city of Tulsa, and that a hearing was had thereon before the city commission holding against said defendant; that the said L. P. Partee failed and neglected to appeal from the decision of the commissioners of the city of Tulsa and from the apportionment made by them, upon which apportionment certificate No. 2190 was duly issued.

"The court further finds that under the charter of the city of Tulsa that portion of the cost of paving of the right of way of the Missouri, Kansas & Texas Railway Company should be assessed against the Missouri, Kansas & Texas Railway Company.

"The court further finds that because of the failure of the defendant, L. P. Partee, to prosecute his appeal from the decision of the city commissioners in making the apportionment of the expense of the improvements on Archer street, as made by them, and upon which the certificate No. 2190 was issued by the city of Tulsa to the paving company, the rights of the holder of said certificate have become absolute, and the defendant, L. P. Partee, is estopped from questioning the validity of said apportionment, because he did not prosecute his appeal within ten days thereafter as provided by the city charter, and that he cannot in this proceeding try out the question of the equitable or inequitable apportionment made by the city of Tulsa of the expense of said improvement on Archer street and upon which apportionment ceritficate No. 2190 was issued.

"The court further finds that under the facts as proven and the law applicable thereto plaintiff is entitled to recover judgment against the defendant, L. P. Partee, for the amount due on said certificate No. 2190, and that the same is a first lien on all the right, title, estate, and interest of the defendant, L. P. Partee, in and to lot 1 in block 54, original town, now city, of Tulsa; that the plaintiff is entitled to a foreclosure of its lien and to an order for the sale of said property to secure its said judgment in event the same is not paid."

It is now asserted that the court did not properly apply the law to the facts as found by the court in the trial of said cause; that under the provision of section 14 of article 9 of the charter of the city of Tulsa it is mandatory and compulsory upon the city to tax the entire expense of the improvements of this nature on the right of way against the railway company; and that under the provisions of the charter the city had no authority or right to apportion the expense therefor to private property abutting the street crossed and occupied by said right of way, but that the entire cost thereof must be paid by the railway company, and no part can be assessed against the abutting property.

The provisions of the charter applicable here are as follows:

"Sec. 4. The cost of grading, paving, curbing, and guttering any street, avenue, or alley may be paid in part by the city or in part by the owners of property benefited by such improvement and abutting upon the property, street, or alley or portion thereof ordered to be improved, and any resolution or ordinance passed and adopted by the board of commissioners declaring the necessity for such construction shall provide what proportionate part, if any, of the costs of

such improvement shall be paid by the city, and the proportion of the costs that shall be borne by the owners of property abutting on such street or alley or part of street or alley ordered to be made: Provided that, when any person, firm or corporation owns any railroad or street railroad or railroad switch of any kind on such street or alley or portion thereof ordered to be improved, such person, firm, or corporation shall pay the whole costs of such improvement between the rails and tracks and for two feet on each side of the rails of such railroad or street railroad, and the city and abutting property owners shall be relieved of the part of the costs to be paid by such road. The pro rata of the cost of such improvement payable under the terms hereof by any railroad or street railroad or the owners thereof, together with all costs of collecting the same, shal be a special tax against and secured by a lien upon the railroad, ties, rails, fixtures, rights, and franchises of such railroad or street railroad and the owners thereof, and wherever a contract shall be let for any such improvement the board of commissioners shall levy a special tax upon the railroad, ties, rails, fixtures, rights, and franchises of such railroad or street railroad, for the pro rata share due from such road for improvement between their track and rails and two feet on each side thereof. Said tax shall be levied at or after the time such contract is let or executed, and shall become due and delinquent as the ordinance levying the same may specify, and shall be a lien from the time of levying, and the proceeds thereof shall be used for the payment of the costs of such improvement. If said taxes be not paid as provided for by ordinance, then collection shall be enforced as the collection of other taxes by advertisement and sale of the property, rights, and franchises levied upon: Provided, it shall not be necessary to sell at the same time as for delinquent ad valorem taxes. At any such sale the city tax collector or such other officers as shall be designated by the board shall execute to the purchaser a deed similar to the one executed when the property is sold for ad valorem taxes. Such assessment and lien may also be enforced by suit brought in any court having jurisdiction thereof. The lien provided for shall be a first and prior lien paramount to all incumbrances except taxes, upon the roadbeds, ties, rails, fixtures, rights and franchises of the person, firm, or corporation or company owning the railroad or street railroads aforesaid:

"Provided, further, that when any street, avenue, or alley is ordered graded, paved, curbed, or guttered as herein provided any person, firm, or corporation having right of way or operating a railroad intersecting or crossing such street, avenue, or alley so ordered improved shall bear the entire expense of grading, paving, curbing, and guttering and laying sidewalks over and across their tracks and right of way for the full width of such right of way. * * *

"Sec. 6. After excluding the costs of making any improvements between and two feet on each side of the track and rails of railroads or street railroads, and the entire cost of any improvements crossing the right of way of any railroad, which costs are to be assessed against, and wholly paid by the owners of such railroads as herein provided. * * *

"Sec. 7. The contract or contracts for such improvements and the bond or bonds having been executed and approved by the board, it shall be the duty of the city engineer to at once prepare a written statement which shall contain the names of such persons, firms, or corporations or estate that may own property abutting upon the section or sections of the street, avenue, or alleys paved, to be improved, the number of front feet owned by each, and describing the property owned by each by block and lot number, or otherwise, so describing such property as to identify the same; and such statement shall also contain an estimate of the total costs of such improvement, the proportion and amount of such costs to be assessed against abutting property, the amount per front foot to be assessed against abutting property, and the total estimated amount per front foot to be assessed against abutting property, and the total estimated amount to be assessed against each owner. Such statement shall be submitted to the board, which shall examine the same and correct any errors which may appear therein; but no error, omission, or mistake in such statement shall in any manner invalidate any assessment made, or lien or claim fixed, thereunder. When such statement has been examined and approved by the board, and it shall have determined to assess the costs of such improvements against such property, it shall so declare by resolution, directing notices thereof to be given unto the owners aforesaid by publication for five consecutive days in a daily newspaper of general circulation in the city of Tulsa, and also to mail to such owners a copy of such notice by registered letter deposited in the post office in the city of Tulsa, directed to the address of such owner, if known, or if such address be not known, then to the agent or attorney of such person, if known, provided that the registered letter aforesaid shall be deposited in such post office in the city of Tulsa within ten days prior to the date set for hearing hereinafter provided for, and provided further that the method herein prescribed for service of notice by registered letter shall be merely cumulative of the service of notice by publication above mentioned, and provided that in all cases where personal service by registered letter shall not be obtained said service by said

publication shall nevertheless be deemed valid and binding. The ceritificate of the city auditor or such other officer as shall be designated by the board to the effect that the address of such owner or owners or their agent or attorney is unknown to him, and personal service cannot be had upon them, shall be deemed conclusive of such fact. The notice aforesaid shall state the time of the hearing hereinafter provided for, the general character of the improvements determined upon by the board the street or part thereof to be improved, and the proportionate part and amount per front foot of the total cost of the proposed improvement which it is contemplated shall be assessed against the property and the owners thereof abutting upon such street or alley to be improved. On the date stated in the notice aforesaid, or any time thereafter, before any special assessment is actually levied, any person, firm, or corporation interested in any property which is claimed to be subject to assessment for the purpose of paying the cost of any improvement, in whole or in part, shall be entitled to a full and fair hearing before said board as to all matters affecting such property, or the benefit thereto of such improvements or any claim of liability or objection to the making of such improvements of any invalidity or irregularity in any of the proceedings in reference to making such improvements or any other objection thereto. Such person, firm, or corporation shall file their objections in writing, and thereafter the board of commissioners shall hear and determine the same, and full opportunity shall be given to the persons, firms, or corporations filing such objections to produce evidence, subpoena witnesses, and to appear in person or by attorney, and a full and fair hearing thereof shall be given by the said board, which hearing may be adjourned from time to time without further notice, and the board of commissioners shall have full power to inquire into and determine the facts necessary to the adjudication of such objects and the ascertainment of special benefits to such owners by means of such improvements, and shall make such order in such case as may be just and proper. Any objections to the regularity of proceedings with reference to the making of such improvements as herein provided or to the validity of any assessment against said property or the validity of any assessment against said property or the owners thereof shall be deemed waived, unless presented at the time and in the manner herein specified. The time as set for such hearing shall be not less than ten days from the time of the first publication of such notice. When the hearing above mentioned has been concluded, the board shall by ordinance assess against the several owners of property, and against their property abutting upon the public street or alley or part thereof ordered to be

improved, such proportionate part of the costs of said improvements as by such board may have been adjudged against such respective owners and their property. Said ordinance shall fix a lien upon such property for the respective amounts to be assessed, and shall state the time and manner of payment of such assessment, and said board may order that the said assessment shall be payable in installments, and prescribe the amount, time, and manner of payment of such installment, which, however, except as hereinafter provided, shall not exceed ten years from the completion of said improvement, and its acceptance by the city. This said ordinance shall also prescribe the rate of interest to be charged upon deferred payments not exceeding 7 per cent. per annum, and may provide for the maturity of all deferred payments, and their collection, upon default in the payment of any installment of principal or interest. Each property owner, his heirs, assigns, or successors, however, shall have the privilege of discharging the whole amount assessed against him or any installment thereof, at any time before maturity, upon payment thereof with accrued interest. Upon the payment by any property owner of his assessment in full, the city shall cause to be executed by its mayor and duly acknowledged for record a release of the lien of such assessments. * * *

"Sec. 9. Whenever any error or mistake shall occur in any proceedings provided for in this charter, it shall be the duty of the board to correct the same, and wherever it shall have been finally determined in any suit that any assessment against any property or its owner or lien against such property fixed or attempted to be fixed under the terms hereof is for any reason invalid, unlawful, or not enforceable, then it shall be the duty of the board to at once proceed to reassess against such property such proportion of the costs of making such improvements as shall be proper, lawful, and just, and fix a lien against such property; and such board shall have power, and it shall be its duty, by ordinance or resolution, to adopt such rules and regulations, and to make such orders as shall, in compliance with the law, provide for correcting such mistakes and making a valid reassessment against such property and fix a valid lien thereon. Said board shall have power and it shall be its duty to adopt such rules and regulations for a hearing to the owners of such property before such reassessment which may be necessary or proper, in order to legally bind such owners and their property by such reassessment, and shall have power to adopt all other rules and regulations which may be requisite to a valid reassessment of such property. Subject to the provisions of this charter, the cost of any such improvement or improvements, after deducting the proportion of such costs as may be assessed against any railroad or

street railroad, and the proportion of said costs which may have been finally assessed against property abutting upon the street or alley or section or portion thereof ordered to be improved and against the owners of such property shall be borne and paid by the city. * * *

"Sec. 14. At any time within ten days after hearing in section 7 of this article provided for has been concluded, any person or persons, corporation or corporations, having an interest in any real estate which may be subject to assessment under this charter, or otherwise having any financial interest in such improvement or improvements, or in the manner in which the cost thereof is to be paid, who may desire to contest on any ground the validity of any proceeding that may have been had with reference to the making of such improvements, or the validity in whole or in part, or any assessment lien fixed by said proceedings, may institute suit for that purpose in any court of competent jurisdiction. Any person or persons, corporation or corporations, who shall fail to institute such suit within a period of ten days, or who shall fail to diligently prosecute such suit in good faith to final judgment, shall be forever barred from making any such contest or contests, and this estoppel shall bind their heirs, successors, administrators, and assigns. The city of Tulsa, or the person or persons to whom the contract has been awarded, shall be made defendants in such suit, and any other proper parties may be joined therein. There shall be attached to plaintiff's petition an affidavit of the truth of the matter therein alleged, except such matters as are alleged on information and belief, and that such suit is brought in good faith, and not to injure or delay the city or contractor, or any owner of real estate abutting on the improvement. Unless the provisions of this section are complied with by plaintiff or plaintiffs, such suit shall be dismissed on motion of any defendant, and in that event plaintiff or plaintiffs shall be barred and estopped to the same extent as if suit had not been brought. In any case where a suit is brought as provided for in this section, then the performance of the work may be suspended at the election of either the city or the contractors until such suit shall be finally determined in the court of original jurisdiction or any appellate court to which the same may be taken by appeal or writ of error; Provided, that any appeal or writ of error shall be perfected within 30 days from the adjournment of the term of court of original jurisdiction at which final judgment was rendered in such suit: And provided, that no appeal or writ of error to review the judgment of such court, may thereafter be taken or sued out by either party."

From a careful review of the evidence we have reached the conclusion that the property of the plaintiff in error was improper

ly assessed, or, in other words, that the assessment placed by the city authorities upon that part of lot 1 in said block owned by plaintiff in error far exceeds the amount which should properly have been assessed against his property; yet it is admittedly true that his property was within the improvement district and subject to some tax. This is conceded by him. Under the provisions of the charter he was entitled to and did receive due notice of this assessment, and duly appeared before the proper authority and made his protest and had his hearing thereon, but he failed to prosecute an appeal therefrom or to institute a suit within the time provided by the charter, and as a result thereof he is now barred from maintaining this action.

It appears from the record that the plaintiff in error paid the first installment or assessment against his property, and when the second assessment matured more than two years after the same was made, he instituted this action to enjoin the collection thereof. He cannot recover here unless he shows that the board of commissioners of Tulsa was wholly without jurisdiction to levy this assessment. This he has not done; for, as stated, it is admittedly true that his property was within the improvement district and subject unquestionably to a portion of this assessment. If for any reason this assessment was unfair or improperly apportioned, the city charter gave him the right to redress any grievance he had and to correct the same in a court of competent jurisdiction. This he failed to do.

It appears that the bone of contention here is whether the railway company had a right of way 100 feet wide across Archer street; the city contending that the company did not possess such right of way, while the plaintiff in error contends that the company did. The trial court, with the evidence before it, found that the company did possess a right of way across Archer street 100 feet wide; yet this is a question that could have been determined in an action instituted by the plaintiff in error within the time provided by the charter, and if any improved assessment had been made on account of this mistaken view of the situation, the same could have been corrected in due manner and form as provided by the provisions of said charter.

This court in a number of cases has held that, when a city acquires jurisdiction by the proper preliminary proceedings to pave certain of its streets, a property owner who sits by and sees such improvements made

with the knowledge that the city authorities intend to levy and collect a special tax against his property, and that those who do such work cannot be compensated in any other way, and there is no objection thereto until complete performance of the work has been made, cannot thereafter maintain an action to enjoin the collection of assessments against his property on the ground of alleged irregularities in the proceedings subsequent to the time the jurisdiction to perform such work had attached.

In City of Muskogee v. Rambo, 40 Okla. 672, 138 Pac. 567, this court, through Mr. Justice Kane, quoting from Perry v. Davis et al., 18 Okla. 427, 90 Pac. 865, said:

"It was the plain duty of the defendant in error, upon the publication of the ordinance creating the sewer district, or when they leaned that labor and money were being expended in the actual construction of the sewer, to vigorously oppose and protest against it; then was an opportune time to test, by injunction or other proceedings, the legality of the various steps being taken."

See City of Chickasha v. O'Brien, 58 Okla. 46, 159 Pac. 282; City of Norman v. Allen, 47 Okla. 74, 147 Pac. 1002; Grier v. Kramer, 62 Okla. 151, 162 Pac. 490; City of Muskogee v. Rambo, 40 Okla. 672, 138 Pac. 567; Norris v. City of Lawton, 47 Okla. 213, 148 Pac. 123; City of Coalgate v. Gentilini, 51 Okla. 552, 152 Pac. 95; Weaver v. City of Chickasha, 36 Okla. 226, 128 Pac. 305.

The other contentions of the plaintiff in error are untenable, and the decisions of the lower court being in accord with the established rule in this jurisdiction as appears from the foregoing cases, the judgment of the lower court is therefore affirmed.

By the Court: It is so ordered.