Note.—See under (1) 27 Cyc. p. 96, (2) 27 Cyc. p. 82; (3) 27 Cyc. p. 349.

---

## MISSOURI, K. & T. RY. CO. v. CITY OF TULSA et al.

No. 12681—Opinin Filed March 24, 1925.

Rehearing Denied June 30, 1925.

(Syllabus.)

1. **Municipal Corporations — Charters — Authority for Adoption.**

Under section 3a, art. 18, of the Constitution, any city having a population of more than 2,000 inhabitants may frame a charter for its own government, consistent with and subject to the Constitution and laws of this state, and the Governor shall approve the same if it shall not be in conflict with the Constitution and laws of this state.

2. **Same—Paving Assessments and Liens— Procedure for Enforcement—Validity of Charter Provisions.**

The provisions of a city charter, and of an ordinance in harmony therewith, authorizing the city board of commissioners to improve streets and alleys and to let contracts for paving same and to make assessments against abutting lots in proportion to the benefits accruing to such lots and to create a lien against such lots for the payment of such assessments and to provide that such lien may be foreclosed in a civil action in the district court, do not exceed the limitations, contained in section 3a, art. 18, of the Constitution, upon the powers of a city, or conflict with the provisions thereof, provided such charter provision and ordinance do not undertake to make the lien for city assessments prior and superior to the liens of the state for delinquent taxes or other liens which the state may have against such property.

Nor is the provision of such charter and ordinance authorizing a foreclosure of such lien by a civil action in district court invalid, provided such procedure is not made exclusive.

3. **Same.**

The statutes on revenue and taxation prescribe a procedure for enforcement of delinquent tax liens against real estate, including city taxes and assessments for city improvements, but, not being made exclusive, do not prohibit a city from authorizing a different procedure for the collection of city assessments, provided such procedure authorized by the city is not made exclusive.

4. **Statutes — Cumulative Statutes — Additional Remedies.**

Provision for an additional remedy, not exclusive, though different from an existing remedy, does not take away the older remedy nor conflict therewith, nor does the fact that such additional remedy is cumulative render it invalid.

5. **Constitutional Law — Courts — Right to Remedy.**

Under section 6, art. 2, of the Constitution, "the courts of justice of the state shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation. * * *"

6. **Courts — District Court Jurisdiction— Constitution.**

Under section 10, art. 7, of the Constitution, "the district courts shall have original jurisdiction in all cases, civil and criminal, except where exclusive jurisdiction is by this Constitution, or by law, conferred on some other court. * * *"

7. **Municipal Corporations — Validity of Charter Provisions — Foreclosure of Assessment Liens in District Court.**

The provision in the charter of the city of Tulsa, authorizing foreclosure of assessment liens in the district court, was not conferring a new and additional jurisdiction upon the district court, as the district courts already had jurisdiction over such matters, under the Constitution.

8. **Same — Priority of Assessment Liens Over Other Liens—Erroneous Judgment.**

A judgment of the district court, decreeing an assessment lien for city improvements to be prior and superior to any and all other liens whatsoever, is in conflict with the rights of the state in the priority of any liens which it may have against such property, and also erroneous under an ordinance which expressly excepts state liens.

9. **Same — Power of City as to Improvements and Assessments.**

A city, acting under its charter provisions and within its charter limitations, may determine the necessity for street improvements, make assessments of the cost thereof, apportion such costs against abutting property within the improved district, upon the basis of accruing benefit, and provide that

such assessments shall constitute a lien against such property for the payment of such assessment.

### 10. Appeal and Error—Law of the Case— When Doctrine Not Applicable.

The doctrine of "the law of the case" is not applicable nor controlling in a second appeal, where issues of fact and rights of different parties are involved in a second appeal which were not involved and determined in the first appeal.

### 11. Municipal Corporations — Liability of Property to Special Assessments — Plats as Controlling.

In a controversy as to whether or not certain lots should be considered as abutting property and assessed as such, according to accruing benefits, where two plats are involved, one of which shows the lots as not abutting upon the street to be improved, the other, a later plat, showing that such lots have been changed and extended in length. and that they do abut upon the improved street, the question is not so much whether they are to be considered as abutting property under one plat, as whether they are benefited property under the actual conditions as shown by the later plat.

### 12. Same — Question of Benefits from Improvements — Legislative Powers of City —Conclusiveness.

In the matter of improving a given district in a city, and the assessment of each piece of property within such district for its proportionate liability for costs of improvement. the determining question is the actual benefits to accrue to each piece of property and, such question being legislative, and having been determined by a city in its legislative capacity, is conclusive upon the courts.

Error from District Court, Tulsa County; Owen Owen, Judge.

Action by the Missouri, Kansas & Texas Railway Company against the City of Tulsa (the First National Bank of Cleveland, Ohio, intervening). Judgment for intervener, and plaintiff brings error. Modified and affirmed.

M. D. Green and H. L. Smith, for plaintiff in error.

Harry L. S. Halley, Asst. City Atty., for defendant in error City of Tulsa.

Randolph, Hawer & Shirk and H. M. Gray, for defendant in error First National Bank of Cleveland, Ohio.

HARRISON, J. This action was begun in the district court of Tulsa county by the Missouri, K. & T. Ry. Company to enjoin the city of Tulsa from collecting certain paving assessments alleged to have been illegally levied against the railway company's property, the property in question being a portion of the railroad right of way, the assessment being the railway company's proportionate liability for the cost of paving a street upon which the city claimed the railroad property abutted. The railway company contends that a portion of the property assessed does not abut upon said street, and is therefore not subject to the assessment in question; the city of Tulsa contends that it is abutting property and joins issue with the railway company upon all of its alleged grounds for injunction.

Before the issues between the railway company and the city of Tulsa were determined by the trial court, the First National Bank of Cleveland, Ohio, which was the holder of certain "tax bills" issued against said property in payment of said paving, was permitted to intervene, and, in its plea prayed for judgment for the sum of its "tax bills," and that such judgment be declared a first lien against the property in question and that the property be sold to satisfy such lien and judgment.

The court refused to grant the injunction asked for by the railway company, but permitted the bank to intervene, and rendered judgment in favor of such intervener for the amount of its several "tax bills" and decreed such judgment to be a first lien upon the property against which the respective "tax bills" were assessed.

The intervener bank owned 30 of such "tax bills," or "certificates of assessment," and sued upon each of same as a separate cause of action, its plea of intervention consisting of 30 separate causes of action in the one suit. The trial court gave separate judgments on each cause of action and concluded its judgment upon each cause with the following specific decree, to wit:

"And that to secure the payment of said sums the defendant First National Bank of Cleveland is hereby declared and decreed to have a lien prior and superior to any and all other liens and claims against the following described real estate in Tulsa county, Okla., to wit: (description) and is entitled to a foreclosure of such lien."

The concluding paragraph of the judgment contains the following:

"And it is further ordered, adjudged and decreed, that the aforesaid 30 liens and each of them be, and the same are hereby foreclosed, and that each of the above-described tracts of real estate be sold separately, subject to appraisement in manner provided by law, that the proceeds of the sale of each of said tracts, be applied:

"First: To the payment of the costs of this action.

"Second: To the satisfaction of the remainder of the liens of the de.endant, First National Bank of Cleveland, Ohio, against said tracts of real estate.

"Third: That the residue, if any, be paid to the clerk of this court, and distributed as the court hereafter may order."

The railroad company brings the case here by appeal. Two questions are presented, the determination of which disposes of the case, viz.:

1st. Whether the district court erred in permitting said bank to intervene, in entertaining jurisdiction and in rendering the judgment rendered in favor of such bank.

2nd. Whether there was a portion of plaintiff's land which was not abutting property and should not have been assessed as such.

As to the first question, viz., whether the court erred in permitting the bank to intervene and in its judgment in favor of such bank, depends upon, first, whether such judgment is in accordance with the provisions of the charter and ordinances of the city of Tulsa under which the assessments in question were made; second, if such judgment be in accord with the charter provisions and ordinances, then whether such charter provisions and ordinances are valid under the Constitution and statutes of the state.

It is contended by the railway company that the city had no authority to levy the assessments in question and provide for their collection, and that the trial court had no jurisdiction of intervener's cross-petition to enforce collection and erred in rendering judgment in favor of intervener. This contention is based upon two decisions from this court, viz.: Missouri, K. & T. Ry. Co. v. City of Tulsa et al., 45 Okla. 382, 145 Pac. 398, and City of Sapulpa v. Land, 101 Okla. 22, 223 Pac. 640.

The effect of the decision in Missouri, K. & T. Ry. Co. v. City of Tulsa, supra, will be considered under the second proposition presented.

The decision in City of Sapulpa v. Land, supra, the railway company contends, is controlling on the question of whether the city had authority, under the Constitution and general laws of the state, to provide for the foreclosure of this character of assessment liens in the district court. The railway company contends, in effect, that the manner of levying taxes and levying assessments for street improvements and the procedure for enforcement of tax liens and assessment liens are matters over which the state, in its sovereign capacity, has supreme authority, and having provided the procedure for the enforcement of such liens, the city has no authority to provide a different procedure; that the state in the exercise of its sovereign powers having provided in the statutes on revenue and taxation that when city or municipal taxes or assessments for city improvements became due and delinquent the city officials shall thereupon certify such delinquencies to the county treasurer, who shall spread same upon his records and enforce collection of same in the manner provided for collection of delinquent state and county taxes on real estate, by a sale of the land by the county treasurer, that such procedure is exclusive. and that any different procedure prescribed by a city is in conflict with the Constitution and statutes and therefore invalid.

It is further contended that City of Sapulpa v. Land, supra, decides this identical question and holds that in matters in which the state has a sovereign interest and over which it has assumed control and provided a procedure in such matters, such procedure is exclusive and cities and other municipal subdivisions of the state have no power to prescribe a different procedure.

In the case at bar, however, we must look to the record to see what has been done in order to determine whether the above theory is applicable.

The record shows that the proceedings of the city in the matter of paving the streets in question were had under ordinance No. 1051, section 2 of which is as follows:

Section 2. "That the assessments hereby levied against each of the above mentioned lots and parcels of land shall bear interest at the rate of seven per cent. per annum, and both principal and interest are hereby declared to be a debt against the owners of the land, and a lien upon such lots and parcels of land prior to all other liens, except the lien for state, county, and city taxes, from this date, and the same shall be enforced and collected as other taxes in the city of Tulsa. Okla., and enforced and collected and may be recovered and the lien enforced by appropriate judicial proceedings."

Our attention is especially directed to the following provision in the foregoing section of said ordinance, to wit:

"And both principal and interest are hereby declared to be a debt against the owners of the land, and a lien upon such lots and parcels of land prior to all other liens, except the lien for state, county, and city taxes."

The ordinance thus expressly excepts the liens created by general statutes for securing the collection of delinquent state, county,

and municipal taxes, and does not conflict with the general statutes which create a first lien upon real estate for the collection of state, county, and municipal taxes, nor conflict with the procedure provided by statute, for enforcement of such liens, nor interfere with the superior powers of the state in the enforcement of any liens over which the state has assumed sovereign control. On the contrary, the ordinance clearly recognizes the supremacy of state laws over municipal laws in matters over which the state has assumed to exercise a sovereign control.

The charter provisions governing the board of city commissioners in matters of street improvements, levying of assessments, creation of liens for the payment of same, and authorizing the procedure for the enforcement of such liens are not exceeded by the provisions of ordinance No. 1051, supra. Section 6, art. 9, of the city charter contains the following language:

"The city of Tulsa acting by its board of commissioners shall have power to assess the whole costs of construction, reconstruction, and repairing of any sidewalks, curbing, guttering, and paving and street, avenue, or alley, or making any other improvements ordered under the terms hereof, against the owners of property abutting upon the street, avenue, or alley or part or section thereof upon which such improvements are to' be constructed, and who are specially benefited thereby, and shall have the power to fix a lien against such property to secure the payment of the portion of such costs assessed against the owners of such property."

Section 13, Id., contains the following:

"The costs of any such improvements assessed against any property together with all costs and reasonable attorney's fees when incurred shall be secured by a lien upon such property superior to all other liens, claims, or title, except city, county, and state taxes, and such liens may be enforced either by suit in any court of competent jurisdiction."

Thus it is seen that the ordinance, supra, is clearly within the powers granted by the charter of the city and that neither the charter provisions nor the ordinance purports to make the lien for city improvements superior and prior to the state liens for delinquent taxes, both the charter and ordinance recognizing the supremacy of state laws over the city laws in matters in which the state has a sovereign governmental interest, and both seem to be within the scope of the following provision in section 3a, art. 18, of the Constitution, to wit:

"Any city containing a population of more than two thousand inhabitants may frame a charter for its own government, consistent with and subject to the Constitution and laws of this state, * * * and the Governor shall approve the same if it shall not be in conflict with the Constitution and laws of this state. Upon such approval it shall become the organic law of such city"

—and to correctly recognize that, under such constitutional provision, city charters and ordinances must be. "consistent with and subject to the Constitution and laws of the state," and must be found to not "conflict with the Constitution and laws of the state," before the Governor is authorized to approve a city charter.

Hence it is unnecessary to review the decision in City of Sapulpa v. Land, for, if such decision does, in effect, hold the ordinance of the city of Sapulpa invalid because of conflict with general statutes, as is contended by plaintiff in. error, it is not applicable to the case at bar, for the reason that the Tulsa ordinance in this case does not conflict with the Constitution or statutes nor tend to interfere with the exercise of the sovereign authority of the state.

While the statutes do provide a procedure for the enforcement of tax liens, including assessment for city improvements, yet they do not provide that such remedy shall be exclusive, and, inasmuch as the ordinance in question recognizes the superior power of the state to enforce its liens first, and to provide the procedure for enforcement of same, such ordinance, though providing a different remedy, has no further effect than merely to provide a cumulative remedy for the enforcement of assessment liens, the ordinances not attempting to make such remedy exclusive. It does not compel the owner of a "tax bill" to resort to this remedy, but merely grants him authority to do so. The owner of a "tax bill," or "certificate of assessment", of the character here involved, may avail himself of either the procedure provided by general statutes for the enforcement of his lien, viz., by having the proper city officials to certify same to the county treasurer, where his lien may be enforced as provided by general law for the collection of delinquent taxes on real estate, by sale, by the county treasurer, or he may adopt the procedure authorized by the city ordinance, which, at most, is no more than a cumulative remedy, neither remedy being made exclusive.

A subsequent statute providing a different remedy to that provided by an existing statute, unless expressly made exclusive, does not take away the older remedy nor conflict therewith; and the fact that the later statute is cumulative does not of it-

self render it invalid. 25 R. C. L. p. 924.

It is our opinion, therefore, that the or-. dinance in question is valid, but that the judgment of the trial court is erroneous, because it not only exceeds the provisions of the ordinance, but, by decreeing the "tax bills" in question to be a "lien prior and superior to any and all other liens and claims against the property," it sets aside the state's priority of tax liens, and all other state liens, for that matter, and to this extent must be modified. It should not be reversed for want of jurisdiction, nor upon the theory that it had no other jurisdiction except that conferred by the ordinance, because, under the Constitution and general laws, the district courts. already had jurisdiction over such matters. Section 6, art. 2, Constitution of Oklahoma, and section 10, art. 7, Id.

The ordinance does not confer any power upon the district court which it did not already have, nor does it prescribe a new or different procedure. It merely authorizes the enforcement of such liens in a civil action. in the district court, in the manner prescribed by the general Code of Civil Procedure.

In this we do not mean to hold and do not hold that the owner of a certificate of purchase issued by the county treasurer for land sold for delinquent taxes could maintain an action in the district court for the enforcement of such certificate, because such question is not before us. However, there is a difference between the nature of a lien created to secure the payment of "tax bills", issued by a city for payment of assessments against abutting property for street improvements, and the nature of a lien created by statute to secure the payment of delinquent taxes. "Bills" of this character are merely negotiable evidences of debt and, in their nature, are more analogous to negotiable bonds, or warrants, issued in payment of city indebtedness for improvements, to enforce payments of which district courts have always had jurisdiction.

Wherefore, we hold that while the district court had jurisdiction over the subject-matter, yet we hold that it erred in its judgment, by decreeing the lien in question to be a prior and superior lien to all other liens or claims whatsoever, and by not decreeing such lien to be subject to any and all liens which the state might have had against the property in question.

In this connection the contention is also made that the city had no authority to construct the improvements, make the assessments, issue tax bills in payment thereof, and make such tax bills a lien against the property.

That a city, acting under its charter provisions and within its charter limitations, may determine the necessity for street improvements, make estimates of the cost thereof, apportion such cost against abutting property upon the basis of accruing benefits, and make assessments against such property for the payment of such proportionate cost and provide that such assessments may constitute a lien against the property until paid, has, in plain effect, been so repeatedly held by this court that it is no longer an open question. Arnold v. City of Tulsa, 38 Okla. 129, 132 Pac. 669; M., K. & T. Ry. Co. v. City of Tulsa, 45 Okla. 382, 145 Pac. 398; Flanagin v. City of Tulsa, 55 Okla. 638, 155 Pac. 542; City of Tulsa v. McCormick, 63 Okla. 238, 164 Pac. 985; Collinsville v. Ward, 64 Okla. 30, 165 Pac. 1145; Partee v. Cleveland Pav. Co., 70 Okla. 31, 172 Pac. 945, and in several other cases, and such was the holding in Sapulpa v. Land, supra.

2.  As to the second question, viz.: "Whether the lots in question are not abutting lots and not subject to assessment as such". the railway company contends that in M., K. & T. Ry. Co. v. City of Tulsa, 45 Okla. 382, 145 Pac. 398, it was decided that the same lots herein sought to be assessed were not abutting lots and not subject to assessment as such, and that such decision became and is "the law of the case" and should govern in this case as to whether or not such lots are assessable.

In the above case the railway company brought suit in the district court to enjoin the city of Tulsa from assessing the same lots herein sought to be assessed; the district court, after a hearing, refused to enjoin the city from assessing such lots, whereupon the railway company appealed from the order denying the injunction to this court, and this court, upon the evidence contained in the record in said case, held from the evidence there disclosed, that the lots, which were the same lots here involved, were not abutting lots and not assessable as such. The railway company now contends that under the doctrine of "the law of the case" said decision became binding and should govern in the case at bar.

The doctrine of "the law of the case" is recognized and adhered to by this court (Chiskasha Cotton Oil Co. v. Lamb. 58 Okla. 22, 158 Pac. 579, and authorities cited therein) and is applied in proper cases.

No question necessarily involved and decided on its merits, in a former appeal, will be considered on a subsequent appeal in the same case, provided the facts and issues are substantially the same in the later appeal that they were in the former appeal.

But a rigid application of such doctrine to all cases wherein the merits of the case were determined in the former appeal has not been favorably adhered to by this court, especially where the merits are only incidentally determined in passing upon some interlocutory order. Herring v. Wiggans, 7 Okla. 312; Kuchler v. Weaver, 23 Okla. 420, 100 Pac. 915; Johnson v. Taylor, 68 Okla. 229, 173 Pac. 1039; Woodmen of the World v. Bridges, 37 Okla. 430, 132 Pac. 133; State Bank v. City Nat. Bank, 26 Okla. 801, 110 Pac. 910. Nor has it been favorably adhered to in other courts. 4 C. J. 1093 to 1096, and cases cited in notes. Nor has it been regarded as controlling even in the same case where the facts and issues are different in a subsequent appeal from what they were in the former appeal. 4 C. J., supra. The foundation of the rule is the policy to finally determine controversies and end litigation. Sharon v. Sharon, 79 Cal. 633; Ogden v. Larrabee, 70 Ill. 510; First Nat. Bank v. Farmers Bank (Neb.) 95 N. W. 1062; Kramer v. Southern Ry. Co. (N. C.) 38 S. E. 872; Stager v. Troy Co. (Ore.) 68 Pac. 405; Roberts v. Cooper (U. S.) 15 L. Ed. 969; Standard Sew. Mch. Co. v. Leslie (U. S.) 55 C. C. A. 323; Mangold v. Bacon (Mo.) 141 S. W. 650. But the decision in a former appeal is not binding in a second appeal, nor is the doctrine of "the law of the case" applicable in the second appeal, where the rights of different parties are involved and where different issues of fact are to be determined in the second appeal. 4 C. J. 1006-1007; also Oklahoma cases cited above.

The issues of fact in the instant case, and also the parties to the action, differ from the issues of fact and parties to the action in the former appeal. In that case the decision, that the lots in question were not abutting lots and were therefore not assessable, was based upon conditions evidenced by the original plat of lots and blocks in the city of Tulsa, apparently without knowledge of the fact that a subsequent platting of the city, by the city authorities had changed the original plat, changed the original conditions and disclosed a materially different condition. The former opinion goes exhaustively into the definitions of what constitute lots and blocks and boundaries thereof, but either because the actual present condition, as shown by the present official plat, was not shown in the record in that appeal, or upon the theory that the original plat was so perpetually binding on the city that under no circumstances or conditions could the city have power to change it, held that the lots in question were not assessable.

But we are not aware of any law which makes an original plat perpetually binding upon a city, nor any law which gives courts authority to dictate to cities how their lots and blocks must be platted, nor how long or how short they must be. While the original plat of a city would necessarily be binding in determining rights and titles acquired under such plat, yet we know of no law which makes an original plat so perpetually binding upon a city as to render it powerless to change same and to replat it in a different manner and different form, if necessity, convenience, and public welfare require such a change. The original plat of the city of Tulsa had three streets running parallel to each other, viz.: Easton street, Fourth street, and Cameron street; Fourth street being between the other two, Easton being on the north and Cameron on the south. The railroad built into the city after the original plat of streets and blocks had been adopted and, by condemnation proceedings and to meet existing necessities and demands, acquired Fourth street for roadbed purposes, together with certain lots and blocks, on each side of such street, for trackage and other purposes. The portion of Fourth street thus acquired was closed by the city authorities for street purposes and opened for railroad purposes, the railroad track being built down Fourth street, thus, according to the original plat, leaving the lots abutting on each side of Fourth street without any street frontage, and thus, as the railway company contends, rendering such lots not abutting upon any street, and thereby rendering them nonassessable and exempt from costs of street improvement. But since the building of the railroad along Fourth street, and the closing of such street, a new and supplemental plat has been made and adopted, which now shows the lots on each side of the original Fourth street, that is, the lots on each side of the railroad track, to extend back to the parallel streets, thus lengthening such lots and making them front upon the streets on each side of and running parallel to the railroad track; wherefore, the city contends, they are subject to assessment as abutting property. Thus the railway company contends that the original plat should

control and that under said plat the lots do not front upon any street and are therefore not assessable as abutting property, while the city contends that the present plat controls, and that it shows said lots as abutting upon the aforesaid parallel streets, and that the railway company, being benefited by the improvements, should bear its proportionate share of the cost.

Viewing the problem in its entirety, it appears to us that, in the matter of improving a given district and the assessment of each piece of property within such district for its proportionate liability for the cost of such improvement the determining question is the proportionate benefits accruing to each piece of property. This method appears to be generally recognized as the fairest basis for making assessments. Legislative bodies have so treated it, and courts have so regarded it. It is also generally settled by the decisions that the question of benefits accruing to city property, within an improved district, is purely a legislative question, and that a legislative determination of such question is conclusive with the courts. The questions of reasonableness and necessity for improvements and the procedure for determining such questions are usually provided for by statute or by city charters and ordinances, and in the case at bar are adequately provided for by the charter and ordinances of the city of Tulsa.

In M., K. & T. Ry. Co. v. City of Tulsa, 45 Okla. 396, 145 Pac. 403, this court said:

"Also it is within the power of the Legislature to conclusivly determine in advance what improvements shall be taxed against certain districts, and it is presumed that the Legislature has determined in advance what property shall be benefited to the extent of the cost of such improvements. French v. Barber Asphalt Co., 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879; Paulsen v. City of Portland, 149 U. S. 30, 13 Sup. Ct. 750, 37 L. Ed. 637; Meier v. City of St. Louis, 180 Mo. 391, 79 S. W. 955; Cooley on Taxation (3d Ed.) vol. 2, p. 1257; Harton v. Town of Avondale, 147 Ala. 458, 41 South. 935."

Under such view, and we concur therein, the question is not what might have been abutting property, under an original and different plat, but what is benefited property, under existing conditions, whether the lots be shortened or lengthened by the present plat of conditions.

The city of Tulsa, in its legislative capacity, has determined from the plats of the city, as they now are, that the lots in question, though extended in length by the change, shown by the present plat, will nevertheless be benefited in their entire length by the paving in question, and has computed and apportioned the assessments accordingly. No serious contention is made that this property has not been benefited or that it will not be benefited. No good reason has been shown why it will not be benefited. The matter of determining the benefits being, as we have seen, a legislative matter, and having been determined by the legislative branch of the city government, and there being no constitutional rights thereby impaired, the courts will not disturb the legislative determination.

Wherefore it is our opinion that the judgment of the trial court should be so modified that the lien decreed against the property in question be made junior and subject to the satisfaction of any lien or claim which the state may have against such property, and that in other respects the judgment be affirmed.

Modified and affirmed.

All the Justices concur, except MASON, J., not participating.