## CITY OF TULSA et al. v. McCORMICK.

No. 8487—Opinion Filed April 24, 1917.

(164 Pac. 985.)

(Syllabus by the Court.)

1. **Municipal Corporations—Public Improvement—Assessment—"Block."**

The charter of the city of Tulsa provides that the board of commissioners shall have power to assess the whole cost of construction of improvements of streets, avenues, and area of street intersections, etc., against the owners of property abutting upon the street improved, who are benefited thereby, and in apportioning the cost thereof requires that each quarter block shall be charged with its due proportion of such cost, which shall be apportioned among the lots or subdivisions of such quarter blocks according to the benefits received. Held, that same should be construed to mean that for the purpose of taxing for improvements of streets, all property is subject to assessment which is included between lines drawn parallel with the street improved and back from it one-half block on each side (citing Words and Phrases, "Block").

2. **Municipal Corporations—Street Improvements—Special Assessment.**

It is the purpose of the law authorizing the improvement of streets and avenues of cities and towns by special assessment to require that all property benefited thereby shall be taxed in proportion to the benefits received.

3. **Constitutional Law—Municipal Corporations—Ordinances—Due Process of Law—Special Assessment.**

An ordinance levying assessments to pay for the cost of constructing certain paving upon the streets of the city of Tulsa which creates arbitrary differences in the property to be assessed without regard to the benefits received and which permits certain property benefited to wholly escape assessment violates section 7. art. 2, Wms. Ann. Const., and the Fourteenth Amendment to the Constitution of the United States.

Error from District Court, Tulsa County; Conn Linn, Judge.

Action by F. P. McCormick against the City of Tulsa. J. H. Simmons, Mayor, A. L. Funk, and others, members of its board of commissioners. Judgment for plaintiff directing the passage of an assessment ordi-

nance, and defendants bring error. Affirmed.

John B. Meserve, City Atty., and John R. Woodard, Asst. City Atty., for plaintiffs in error.

Randolph, Haver & Shirk, for defendant in error.

HARDY, J. The city of Tulsa, operating under a charter form of government, contracted with F. P. McCormick to construct certain paving upon certain streets and avenues within the city, which work has been performed according to contract and accepted by the city. After the completion and acceptance of the work, McCormick requested the board of commissioners to pass an assessment ordinance and to issue to him tax bills pursuant thereto. In response to this request, the board of commissioners adopted a resolution in which it was recited that the contract had been completed and the work accepted, and that the apportionment of the costs of the work against the property benefited thereby as provided in the ordinance proposed was just and equitable, but refused to pass the ordinance on the ground that it would be in excess of the power of the city to make the assessment as provided therein, because of the previous decisions of this court in M., K. & T. R. Co. v. Tulsa, 45 Okla. 382, 145 Pac. 398, and Flannagan v. City of Tulsa, 55 Okla. 318, 155 Pac. 542. They offered, however, to pass an ordinance assessing the cost of such improvements in a manner different from that provided in the ordinance which plaintiff desired to have passed. By direction of the board of commissioners, the city attorney entered into an agreed statement of facts upon which this case was submitted. The lower court found that it was within the jurisdiction of the city to enact, and directed the passage of the ordinance requested by plaintiff.

The question to be determined is, How should the assessments for the cost of the improvements be distributed? The charter authorizes the board of commissioners to assess the whole cost of the construction against the owners of the property abutting upon the streets involved, who are specially benefited thereby, and in apportioning the cost of the improvements requires that each quarter block shall be charged with its proportion of the cost of paving the front and side streets of each block, together with the area of the street intersections, etc., which cost shall be apportioned among the lots or subdivisions of such quarter blocks, according to the benefits of each lot or parcel. The city insists that in construing the charter the word "block" must be construed to mean a platted block, as found in the recorded plat of any particular addition or subdivision of the city, as laid off and platted by the person platting and subdividing the same, whether such platted block shall conform to the ordinary city block or not, while plaintiff contends that the word "block" should be given its ordinary meaning when used to designate a portion of a city; i. e., one of the smallest portions of a city, surrounded by streets or avenues. The charter contains no definition of the word, but in the case of M., K. & T. R. Co. v. Tulsa, the word was defined thus: "A 'block' or 'square' is a portion of a city bounded on all sides by streets or avenues." And this definition is in accord with that generally given in the authorities. Words and Phrases; 1 Page & Jones, Taxation by Assessment, 1064; Fraser v. Ott, 95 Cal. 661, 30 Pac. 793; City Street Imp. Co. v. Laird, 138 Cal. 27, 70 Pac. 916; Bowlus v. Iola, 82 Kan. 774, 109 Pac. 405. In the case of M., K. & T. Co. v. Tulsa, the railway company sought to enjoin the collection of assessments on certain lots within the north half of blocks 15 to 21, both inclusive, which abutted north on Fourth street, and south on Cameron street, both of which streets ran east and west. Said blocks were separated by streets which intersected Fourth and Cameron streets at right angles; Cincinnati avenue intersecting said streets between blocks 21 and 22. The company's right of way ran east and west over the north half of these blocks, and covered the lots upon which the assessment was sought to be levied, and also included Fourth street, which had been vacated for right of way purposes. The city contended that by the vacation of Fourth street each of the blocks from 15 to 21, both inclusive, and the corresponding block north of said vacated street, became one block for assessment purposes, and that as the company's lots were within the south half of the block thus formed, they were liable to the special assessment to pay the costs of paving Cameron street. This contention was denied, and in the opinion it was said:

"In other words, the charter means that, for the purpose of taxing for improving Cameron street, the taxing district shall include all the property between lines drawn parallel with that street and back from it one-half block on each side."

An additional reason for the conclusion of the court in that case was stated thus:

"Blocks 15 to 21, both inclusive, appear upon the official plat as blocks, and as blocks they should have been considered by the taxing power of the city in fixing the taxing district. In other words, in so doing, the official plat of the city should have governed, and the north line of the taxing district drawn so as to divide blocks from 15 to 21, both inclusive, equally north and south."

It appeared in that case that the original plat showed blocks 15 to 21 to have been designated thereon as separate blocks, and that Fourth street along the north line of said blocks had been vacated; but it was held that this did not change the situation, nor authorize the property to be assessed in a manner different from that which would have been permitted, had Fourth street not been vacated. In Flannagan v. Tulsa, the plaintiff owned lot 8 in block 3 of the Hodge addition. Block 6 of said addition lay immediately south of block 3. These blocks were platted, and were of the same size as ordinary blocks of the city. Block 3 was bounded on the north by East First street, on the east by Madison avenue, on the south by block 6, and on the west by Lansing avenue. Block 6 was bounded on the north by block 3, on the east by Madison avenue, on the south by Third street, and on the west by Lansing avenue. East Second street ran from some point east of these two blocks west to the center thereof. In the fall of 1911 the city undertook to pave said First street from Madison avenue to Lansing avenue, and for that purpose created improvement district No. 58-A. At that time East Second street had not been opened or extended between blocks 3 and 6, and the city in determining the assessable territory to pay for the paving of said First street treated and considered blocks 3 and 6 as one block, and attempted to assess a portion of the costs against lot 8, which was in the southwest corner of block 3. The court held that this could not be done. It was stated in the opinion:

"We therefore conclude that the defendant city, in determining the assessable territory of said improvement district, did not have the power to treat blocks 3 and 6 as one block, but that it was its plain duty to be governed by the platted blocks, and that, even though East Second street was not extended between blocks 3 and 6, it should have treated it as constructively extended for the purpose of determining the assessable territory in said improvement district Lot 8 is not within the assessable territory, and is therefore not liable for any portion of the cost of improving East First street."

The conclusion in each of those cases is undoubtedly correct upon the facts presented, but the city now contends that because of the expressions used therein, where it was said that the block should be considered as the platted block, it follows that whether the platted block conformed to the block, as that term is ordinarily understood, the authority of the city is limited and controlled by the platted block. This does not necessarily follow. It was not the intention of the city in adopting its charter provision to so declare,

nor would such a construction thereof bring about a result that would be equitable and just. The general thought running through all laws authorizing the improvement of streets and avenues by special assessments therefor is that all property benefited by the improvements shall be taxed to pay therefor, and this principle applies with special force where the territory contiguous to the public way improved is divided into squares by streets and avenues. Engelhard et al. v. Kentucky & Ind. Const. Co., 162 Ky. 774, 173 S. W. 131.

It is admitted that the assessments provided by ordinance which the city refused to enact showed due regard to and is governed by the benefits conferred by the improvements constructed on the property assessed, while under the ordinance the board offered to pass the assessments in some instances exceed the value of the property assessed, while in other cases property clearly benefited and clearly within the natural block escapes assessment entirely, and in some instances the rule is wholly incapable of application, as may be illustrated where the paved street has been projected through a platted block, leaving parts of the block on each side of the street. Another result which would follow the passage of the latter ordinance is that some property which would be benefited by paving the streets surrounding the block of which it forms a part would not be subject to assessment for any part of such paving. This situation may be fairly illustrated by the four city blocks lying between Sixteenth and Eighteenth streets, running east and west, and between Main street and Boston avenue, running north and south. Seventeenth street runs east and west, and divides the blocks north and south, while Baltimore avenue runs north and south, and divides the blocks east and west; the south half of that block lying between Sixteenth and Seventeenth streets, and between Main street and Baltimore avenue is designated as block 1 of the Harbour addition, while the north half is designated as blocks 2 and 6 of the Stansbury addition. The rule contended for by the city would result in an assessment for paving on Seventeenth street extending north from that street 150 feet to a line drawn east and west through the middle of block 1 of Harbour addition, thereby excluding from taxation for such paving the north half of said block 1 of Harbour addition, although said territory is in fact embraced within the south half of said city block. The same result would be reached in the north half of the block. A like situation would also arise in all four of the blocks embraced within the territory mentioned. The property subject to assessment for pav-

ing on Roosevelt avenue under the theory of the city would extend south of that street approximately 150 feet, while on the north it would extend to a distance of about 35 feet. The north boundary of the property assessed for paving on Thirteenth street extends in some places a distance of 115 feet from Thirteenth street, and drops immediately to approximately 33 feet, and then immediately rises again to about 115 feet, without any consideration of difference in the benefits conferred, and the south boundary of the property assessed for improvements on Thirteenth street is even more variable because of the same arbitrary rule. A construction of the city charter which would require the enactment of an ordinance assessing benefits upon this rule would be contrary to section 7, art. 2, Wms. Ann. Const., and the Fourteenth Amendment to the Constitution of the United States.

In Gast Realty & Inv. Co. et al. v. Schneider Granite Co., 240 U. S. 55, 36 Sup. Ct. 254, 60 L. Ed. 523, the Supreme Court of the United States reversed a judgment of the Supreme Court of Missouri which had affirmed a judgment of the circuit court for the city of St. Louis, holding valid an assessment ordinance of the city of St. Louis, which created a taxing district under the city charter whereby three-fourths of the costs of paving a street was assessed according to area, and established a boundary line that after running for some distance on a line not 100 feet back from the street, jumped to nearly 500 feet, where it encountered an undivided tract, and that on the opposite side of the street was 150 feet and 240 feet away; and it was held that this ordinance violated the Fourteenth Amendment to the United States Constitution, because such differences were not based upon any consideration of differences in benefits conferred, but were established mechanically in obedience to the criteria that the charter directed to be applied. The ordinance was referred to as a farrago of irrational irregularities throughout. In the ordinance which the board of commissioners offered to pass, the property to be assessed is mechanically determined, without any consideration of difference in the amount of benefits conferred, and results in many cases in unjust and oppressive assessments, and permits in others the escape of property benefited from any taxation whatever. The charter should be construed to prevent this result, and this may be done, and a just and equitable result arrived at, and the assessment to pay for such paving distributed over all the property benefited thereby, if the word "block" should be given its ordinary meaning as hereinbefore defined, and held to mean a portion of the city bound-

ed on all sides by streets or avenues, unless under circumstances similar to those mentioned in the Missouri, Kansas & Texas Railway Company and Flanagan Cases, where injustice would result, and authority for applying a different rule in such circumstances is found in the proviso to section 6, art. 9, of the Tulsa Charter, which authorizes the board, in particular cases, where the rule we have announced would be unjust, to assess and apportion said cost in such proportion as to it may seem just and equitable, having in view the benefits received by the owner of such property.

The judgment is affirmed.

All the Justices concur.