## ST. LOUIS-SAN FRANCISCO RY. CO. v. CITY OF TULSA, OKL., et al.*

(Circuit Court of Appeals, Eighth Circuit. November 8, 1926.)

No. 7326.

**1. Municipal corporations ☜425(3)—Railroad right of way easement is subject to paving assessment.**

A railway easement for right of way and station grounds is subject to assessment for street paving.

**2. Municipal corporations ☜429—City commission held to have power to extend block, so as to include railroad right of way, as platted for purpose of assessment for paving.**

Under a city charter making each quarter block a unit for assessment for street paving,

*Rehearing denied January 18, 1927.

but giving the city commission power, if this rule would be unjust or work inequality in particular cases, to make the assessment as they deem just and equitable, where a railroad right of way extended between and parallel to two streets, and the blocks fronting on the street to the south, as platted, extended only to the right of way, on the paving of that street, it was within the powers of the commission to extend such blocks for the purpose of assessment of benefits to a line halfway between such street and the one to the north of it, thus including a portion of the right of way.

**3. Municipal corporations ☜450(3)—"Block," for paving assessment, means area bounded by streets or avenues, but is not limited to blocks platted as such.**

The word "block," as used in a city charter, defining the property subject to assessment of benefits for street paving, held not limited to blocks platted as such, but to mean an area bounded on all sides by streets or avenues.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Block.]

**4. Municipal corporations ☜450(3)—Assessment for street paving held not rendered void by unequal size of units assessed.**

That quarter blocks, subject to assessment of benefits as units for street paving under a city charter, are deeper on one side of the street than the other, does not, without more, render the assessment void.

**5. Municipal corporations ☜495—Mode of assessment of benefits for improvements legislative question.**

The question of inequality arising out of the mode of assessment of benefits for street paving prescribed by a city charter is a legislative and not a judicial matter, in the absence of constitutional restrictions.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Robert L. Williams, Judge.

Suit in equity by the St. Louis-San Francisco Railway Company against the City of Tulsa, Okl., and others. Decree for defendants, and complainant appeals. Affirmed.

M. K. Cruce, of Oklahoma City, Okl. (E. T. Miller, of St. Louis, Mo., and C. B. Stuart and J. F. Sharp, both of Oklahoma City, Okl., on the brief), for appellant.

I. J. Underwood, of Tulsa, Okl. (R. C. Allen, H. L. Smith, and H. O. Bland, all of Tulsa, Okl., on the brief), for appellees.

Before STONE and LEWIS, Circuit Judges, and SYMES, District Judge.

LEWIS, Circuit Judge. This is an appeal from denial of injunctive relief against the City of Tulsa in the collection of special benefit taxes assessed on appellant's right of way and station grounds for the paving of that part of First Street which runs along the south side of city blocks 69 to 76 inclusive.

Jurisdiction was based on diverse citizenship. No Federal or State constitutional right was pleaded, and after final hearing the bill was dismissed. The right of way, 200 feet wide, and adjoining station grounds, being a 100-foot strip on the south side, were acquired and the railroad constructed prior to 1902, when a plat of the original town site was made up on which streets running east and west were put down as paralleling the right of way. The first street to the south of the right of way is First Street, and the first one to the north is Archer Street. First Street is 220 feet from the right of way, and Archer Street 300 feet from it, and adding thereto the width of the right of way the distance from First to Archer is 720 feet. The distance between all other streets, both those running east and west and those running north and south, is 300 feet, making rectangular blocks 300 feet square. There are exceptions to the size and form of the blocks. Those lying next to the outer boundary of the town site and those along the railroad farther to the west are of irregular size and shape; also plats of additions to the city contain blocks of different widths and lengths. The tier of blocks between Archer and the railroad opposite the blocks above-named and on to the east are 300 feet square. They are numbered on the plat and are bounded on the south by the right of way. The tier of blocks between First Street and the right of way east of the station grounds are 220 feet north and south and 300 feet east and west. Five blocks, 70 to 74, between First and the railroad are numbered and are bounded on the north by the station grounds, which cut down the north and south dimensions of those blocks as platted to 120 feet. The segment of First Street which was paved lies in the downtown business section of the city. It is said heavy traffic passes in and out of the railroad station over this part of First Street and thence over the north and south streets between the short blocks. There are also several large industrial plants located on parts of the station grounds, leased from the railway company, and traffic to and from them passes in and out over the same ways. When the city came to lay out the improvement district, it ran the south boundary line of the district through the center of the eight blocks lying immediately south of First Street and its north boundary through the right of way midway between First and Archer Streets, which placed the southerly boundary of the district 150 feet from First Street and the northerly boundary 360 feet from that

15 F.(2d)—61

street, thus including in the district the station grounds and the south 140 feet of the right of way. In this action it claims to have kept within the mandate of its powers. This appellant denies.

The City of Tulsa is a city of the first class and is governed by special charter granted to it under constitutional provision, and the Oklahoma Supreme Court held in Berry v. McCormick, 91 Okl. 211, 217 P. 392, that the charter is controlling on matters of this kind. The city's power over the subject is defined by section 6, article 9 of the Charter, which is this.

" *  *  * The City of Tulsa acting by its Board of Commissioners shall have power to assess the whole costs of construction, reconstruction and repairing any sidewalks, curbing, guttering and paving any street, avenue or alley, or making any other improvements ordered under the terms hereof, against the owners of property abutting upon the street, avenue or alley or part or section thereof upon which such improvements are to be constructed and who are specially benefited thereby, and shall have the power to fix a lien against such property to secure the payment of the portion of such costs assessed against the owners of such property and in apportioning the costs of such improvements against abutting property owners, each quarter block shall be charged with its due proportion of paving, both the front and side streets on such block, and the alley or alleys therein, together with the area formed by street intersection and alley crossing, which cost shall be apportioned among the lots or subdivisions of such quarter blocks, according to the benefit to each lot or parcel. If any portion of the abutting property shall not be platted into lots or blocks the Board of Commissioners shall include such ground in proper quarter blocks districts, for the purpose of appraisement and assessment as herein provided. Provided that in no event shall such costs be assessed against such owners or their property, or liability therefor finally determined, until after the hearing herein provided for and after the adjustment of equities between such owners; and provided further, that the costs assessed against any property shall be in proportion to the frontage of the property of each owner to the whole frontage of property in such quarter block so ordered to be improved. Provided, that if the application of this rule would, in the opinion of the board, in particular cases, be unjust or unequal it shall be the duty of the board to assess and apportion said costs in such pro-

portion as it may deem just and equitable, having in view the special benefits in enhanced value to be received by each owner of such property, and the equities of such owners and the adjustment of such apportionment, so as to produce a substantial equality of benefits received by, and burdens imposed upon each owner."

In due time appraisers were appointed to estimate and report to the city commissioners the benefits to property within the district and apportion the cost of the improvements in accordance therewith. On receipt of the report the Board of City Commissioners approved the estimates and apportionment so made and gave published notice to all property owners that on a day named it would hear objections thereto. Appellant filed its objections and was heard. Thereafter an ordinance was passed assessing property within the district in accordance with the report which had been approved. The amount to be borne by each quarter block facing First Street was divided by placing 45 per cent. of it on the third nearest the street, 30 per cent. on the next third and 25 per cent. on the third farthest away from that street. The whole was then apportioned between the lots and parcels therein. Thereupon this suit was brought, on the claim that the assessments made on plaintiff's property were void, for reasons stated in the complaint: (1) The railway company does not own its right of way and station grounds in fee but has only an easement therein, which is not subject to the assessments, (2) that no part of its said property is in the south halves of said eight blocks as platted but is all in the north halves and is unplatted, (3) that none of it abuts on or adjoins First Street, and (4) that none of it received special benefits on account of the improvements made.

[1] The first objection is not pressed here. A railway easement such as this is subject to assessment for special benefits accruing from street improvements. Mackey v. Choctaw, O. & G. R. R. Co. (C. C. A.) 261 F. 342.

[2] The second objection is the one chiefly relied on. The quoted section makes quarter blocks the unit for assessing benefits, and appellant insists that blocks as they are delineated and numbered on the town site plat, must be accepted as the blocks to be dealt with in applying the charter, that none of appellant's property is included within any platted and numbered block, nor within the south half thereof. It is also said that from the plan exhibited by the plat a street would have been put through between First and Archer if the railroad had not been there. But it was there and in all probability is permanent-ly there. In reply it is urged that the accepted definition of a block is the platted portion of a city surrounded by streets or avenues, and that the first street north of First Street is Archer Street, a distance of 720 feet, and that these two streets bound the blocks on the south and north, that the north and south streets are platted 300 feet apart and the dimensions of the blocks are thus fixed by the streets surrounding them as being 300 feet wide and 720 feet long; from this, if accepted, the quarter blocks abutting First Street on the north extend north 120 feet across the short blocks, thence 100 feet across the station grounds, and thence 140 feet into the right of way. And on these opposing contentions the power as exerted is denied and affirmed.

This section 6 of the charter was under consideration by the Supreme Court of Oklahoma in M., K. & T. Ry. Co. v. Tulsa, 45 Okl. 382, 145 P. 398, on facts that cannot be differentiated easily from the facts of this case. After the town was platted the railway constructed its road along one of the streets and obtained an order vacating that street for its use. It acquired parts of blocks abutting on the vacated street. The city thereafter improved a street lying next to and parallel to the one vacated. It treated the two platted blocks lying opposite on each side of the vacated street as one block after the order of vacation; and as here, assessed the property abutting on the improved street half-way back to the street next beyond the vacated street. The court rejected the city's contention that the two platted blocks had become a single block because surrounded on its four sides by streets, and held that the blocks as platted was controlling. That was an appeal from an order refusing to enjoin the city from assessing the railway property for the street improvements. It was reversed with instructions to grant the injunction. On being remanded, holders of special tax bills issued for part of the cost of the improvements were permitted to intervene by the trial court and they procured decrees declaring the amount of these bills to be liens on the property in the different blocks extending back to the vacated street. The plaintiff railway appealed again, and in M., K. & T. Ry. Co. v. City of Tulsa et al., 113 Okl. 21, 238 P. 452, the Supreme Court reviewed its prior ruling in the case. After noting that a subsequent platting had made one block out of the two blocks on opposite sides of the vacated street as they were originally platted, which fact was not called to the attention of the court when the case was first before it, or was not

in the record, it affirmed the decrees below because of the replatting. It was said that the new or supplemental plat showed the lots on each side of the vacated street to extend back to the parallel streets, thus lengthening the lots and making them front upon the two streets parallel to the railroad track. The two opinions in that case seem contradictory, unless mere formality is given more weight than the real substance of things. Because of this we do not regard that case as being at all helpful. Consideration of section 6 came before that court again in Flanagan v. City of Tulsa, 55 Okl. 638, 155 P. 542. The decision in this case was after the first decision in the M., K. & T. Ry. Co. Case and before the second decision in that case. In the Flanagan Case plaintiff owned lot 8 in block 3, which block was contiguous to block 6 on the south as they were platted. These two blocks were surrounded by four streets as one tract. Second Street, if extended, would divide the two blocks. If the two were to be considered as one block plaintiff's lot was subject to assessment for street improvements, if as two blocks it was not assessable. The court said the city "did not have the power to treat block 3 and 6 as one block, but that it was its plain duty to be governed by the platted blocks, and that, even though East Second Street was not extended between blocks 3 and 6, it should have treated it as constructively extended for the purpose of determining the assessable territory in said improvement district." The court simply followed its first opinion in the M., K. & T. Ry. Co. Case; but the latter part of the quoted language seems to imply that the court thought the platted-block theory, standing alone, was weak and needed to be strengthened by the assumption made.

One other case, City of Tulsa v. McCormick, 63 Okl. 238, 164 P. 985, required a consideration of quoted section 6 of the charter. The court was there confronted with a situation demonstrating the gross injustice of adhering literally to the blocks as platted. The city felt that it was bound to follow the first opinion in the M., K. & T. Ry. Co. Case (the second opinion in that case had not been rendered), and it insisted that in construing the charter the word "block" must be construed to mean a platted block as found in the recorded plat, and that it was limited and controlled by the plat. The court said this did not necessarily follow, it was not the intention of the city in adopting its charter provision to so declare, nor would such a construction thereof bring about a result that would be equitable and just, that the general thought running through all laws authorizing the improvement of streets and avenues by special assessments therefor is that all property benefited by the improvement shall be taxed to pay therefor. It was said that the charter contains no definition of the word "block," that the assessment should not be mechanically determined without any consideration of difference in the amount of benefits conferred, resulting in many cases in unjust and oppressive assessments, and in others permitting the escape of property benefited from any taxation whatever:

"The charter should be construed to prevent this result, and this may be done, and a just and equitable result arrived at, and the assessment to pay for such paving distributed over all the property benefited thereby, if the word 'block' should be given its ordinary meaning as hereinbefore defined, and held to mean a portion of the city bounded on all sides by streets or avenues, unless under circumstances similar to those mentioned in the Missouri, Kansas & Texas Railway Company and Flanagan Cases, where injustice would result, and authority for applying a different rule in such circumstances is found in the proviso to section 6, art. 9 of the Tulsa Charter, which authorized the board, in particular cases, where the rule we have announced would be unjust, to assess and apportion said cost in such proportion as to it may seem just and equitable, having in view the benefits received by the owner of such property."

[3] This opinion is enlightening. It recognizes the quarter block rule embodied in the section, the accepted definition of a block and the effect to be given to the plat itself. Ordinarily they are in agreement. But exceptions will occur, when they cannot all be made to fit into the situation. What then? The writer of the opinion turned to the section, and said, by its terms formalities must give way to substance in order that the clear legislative purpose may be carried out. And so the whole section is interpreted, not in a way that would prevent making the needed improvements at all under exceptional conditions, but as authorizing the city in particular cases to apportion the burden as to it may seem just and equitable, adhering as closely as can be to the method set up in the charter. We accept this interpretation and construction, as we would do if it were a State statute. It is reasonable, fair and just. Applying the principle to the facts here, we have a rectangular tract 720 feet long by 300 feet wide surrounded by four streets—a block—and all of it may be made to bear its proportionate share of the burden in improving First and Archer Streets, by treating it as a block, the south

half for improvements on First and the north half for improvements on Archer. Put it aside and look only to the town-site paper plat from which to ascertain blocks in the city, and we exempt a large part of this block from any of the burdens of improving these two east and west streets.

On the facts heretofore stated we think there can be no doubt that benefits accrued to appellant in the paving of First Street. In Bowlus v. City of Iola, 82 Kan. 774, 109 P. 405, it appears that a tract bounded on the north by Jefferson Avenue, on the south by Sycamore Street, and on the west by Broadway was platted as block 83. On the east of it and across an alley there was a strip extending from Jefferson Avenue to Sycamore Street and facing on Madison Street to the east. This strip was platted as block 78. Sycamore Street was paved. The Kansas statute required that assessments be made for each block separately on all lots and pieces of ground to the center of the block on either side of such street or avenue. The south halves of the two platted blocks were assessed as though they were the south half of a single block. The court held that, notwithstanding the plat, the whole tract being bounded by four streets constituted one block within the meaning and purpose of the statute relating to street improvements. The court said:

"Appellants argue that, since the ordinary method of platting is into lots and blocks, the Legislature must have had in mind a block made by platting, and hence that the designation given by the donor of the plat controls. The premise is sound enough, but the conclusion does not follow. According to all the dictionaries and the popular understanding everywhere, a block is a portion of a city surrounded by streets. In common practice city plats are made to conform to this understanding, and the Legislature had in mind blocks so constituted, and not tracts arbitrarily designated as blocks by the donor of a plat."

The facts in A., T. & S. Ry. Co. v. City of Chanute, 95 Kan. 161, 147 P. 836, seem very like the facts in this case. The railway company acquired its right of way five years before the city was platted and organized, and the platting of the streets, lots and blocks was made to conform to the right of way. On that account certain streets were omitted and consequently the blocks, lots and pieces of ground as platted were different from what they would have been if the railway had not been there. Where there were missing streets on account of the railway the city extended the paving tax halfway between the streets which did exist, and this subjected the right of way to the assessments. The right of way was held liable to assessment for its proportionate share of the improvement cost for street paving.

[4, 5] The fact that the quarter blocks on the north side of First Street are more than twice the depth of the quarter blocks on the south side of that street does not, without more, render void the assessment levies. In Bush v. City of Topeka, 103 Kan. 897, 176 P. 642, and Watts v. City of Winfield, 101 Kan. 470, 168 P. 319, the difference in depth of the properties assessed on the two opposite sides of the street was as great as or greater than the difference in this case. When appropriately challenged and made an issue the facts in this respect will be given consideration, coupled with other material matters to be weighed in apportioning the burden. If that be an issue here we are not convinced that the court erred on the point. The physical situation would seem to answer any claim that might be made on that ground. But this subject, and that of special benefits also, present problems for legislative, not judicial, determination and adjustment, in the absence of constitutional restrictions. L. & N. R. R. Co. v. Barber Asphalt Co., 197 U. S. 430, 25 S. Ct. 466, 49 L. Ed. 819; Wagner v. Baltimore, 239 U. S. 207, 36 S. Ct. 66, 60 L. Ed. 230; Bauman v. Ross, 167 U. S. 548, 589, 17 S. Ct. 966, 42 L. Ed. 270. The state supreme court held in Berry v. McCormick, 91 Okl. 211, 217 P. 392, that the city charter superseded and stood in the place of State statutes authorizing and regulating improvement of streets in charter cities.

We think none of the objections are well taken and the decree appealed from is affirmed.