The CITY OF LAWTON, a municipal corporation, Plaintiff in Error,

v.

Paul AKERS et al., Defendants in Error.

No. 37721.

Supreme Court of Oklahoma.

Dec. 16, 1958.

Warren Chrisman, City Atty., Lawton, Smith, Crowe & Leaming, Oklahoma City, for plaintiff in error.

Walter Hubbell, Walters, Barney & Pain, Anadarko, for defendants in error.

A. L. Jeffrey, Municipal Counselor, Edward H. Moler, Ass't Municipal Counselor, Oklahoma City, George W. Miller, City Atty., Ponca City, Walter J. Arnote, City Atty., McAlester, T. Fred Collins, City Atty., Ardmore, T. O. Criswell, City Atty., Durant, Chester A. Brewer, City Atty., Bartlesville, John M. Luttrell, City Atty., Norman, W. J. Ivester, City Atty., Altus, amici curiae.

## PER CURIAM.

The primary purpose of this action in the District Court of Comanche County, Oklahoma, by Paul Akers and others against the City of Lawton and its officers, as defendants, was to enjoin defendants from assessing the properties of plaintiffs with any part of the costs of Street Improvement District No. 91 by special assessment or street improvement bonds. From judgment permanently enjoining defendants from including plaintiffs' properties within the improvement district, defendants have appealed. The parties will be given their trial court designations. Defendants may also be referred to as the "City" and "City Council."

The decisive questions presented in this appeal are set forth in defendants' proposition two wherein it is asserted:

"The evidence did not justify the conclusion that this paving program would not benefit plaintiffs' property, but regardless of the evidence this is a matter for determination of the City Council alone."

The issues thus presented make it necessary that we review the evidence in considerable detail.

Street Improvement District No. 91 includes property on both sides of the street known as "Cache Road." Cache Road runs through the north side of the City of Lawton for a distance of one mile. It begins at Ft. Sill Boulevard and extends west to Sheridan Road.

Prior to the time Cache Road was annexed to the city it was a section line road known as U. S. Highway No. 62. Also prior to its annexation the State Highway Commission of Oklahoma acquired a strip of land about fifty feet wide immediately south of the section line road extending from Ft. Sill Boulevard on the east to Sheridan Road on the west. It paved a strip twenty feet wide.

Thereafter, in platting Fields and Dunning and Liberty Heights Additions adjacent to and immediately south of Cache

Road the developers dedicated a strip of ground for Sycamore Street approximately thirty feet in width, so that Sycamore Street lies between the residential properties in Fields and Dunning and Liberty Heights Additions and Cache Road. In 1946 a strip of pavement fifteen feet in width was constructed on Sycamore Street at the expense of property owners south of and adjacent to Sycamore Street.

Plaintiffs are the owners of residential properties in Fields and Dunning and Liberty Heights Additions. Their properties abut upon Sycamore Street and extend for approximately one-half mile along the south side thereof. These residential lots are restricted to single-family dwellings until 1965 in Fields and Dunning Addition, and until 1966 in the Liberty Heights Addition and thereafter in both additions for successive periods of ten years unless by a vote of the majority of the then owners of the lots in the respective additions it is agreed to change the covenants or restrictions.

Prior to the creation of Street Improvement District No. 91, the State Highway Commission and the United States Bureau of Roads had a rather elaborate program for the improvement of U. S. Highway No. 62 in the area involved. Cache Road was to be improved, together with an additional mile at each end of Cache Road, so that in the immediate area the State Highway Commission contemplated the construction of three miles of pavement extending through the north side of the City of Lawton. At the northeast corner of the City the Highway Commission had already constructed a three level interchange. Extending west from this interchange the Highway Commission had completed approximately one mile of divided four-lane highway, separated by thirty-two foot islands. At this point the highway crosses Ft. Sill Boulevard and connects with the east end of Cache Road. An underpass has been constructed by the Highway Commission at Ft. Sill Boulevard. The Highway Commission plan called for two additional miles of divided four-lane highway, separated by thirty-two foot islands, extending west from Ft. Sill Boulevard. As heretofore indicated, the first mile would improve Cache Road. An underpass was proposed at the intersection of Cache Road and Sheridan Road. Under the Highway Commission plan the City of Lawton was expected to provide some additional right of way easements along the south side of Cache Road at an estimated cost of approximately $450,000. .

The City of Lawton did not provide the additional right of way easements but passed an ordinance purporting to consolidate Cache Road and Sycamore Street into one thoroughfare, and then called upon their engineers to propose plans and specifications for the improvement of Cache Road at the expense of the adjacent property owners. The Engineer's plan called for the construction of a concrete slab thirty feet wide and eight inches thick just south of the twenty foot slab which had been constructed on Cache Road several years ago. The defendant, City Council, by resolution dated December 28, 1954, and acting pursuant to 11 O.S.1951 § 85, approved their Engineer's plan (hereinafter called the "City Plan") and declared such improvement necessary. Following this resolution plaintiffs brought this action alleging, among other things, that the improvement specified in Street Improvement District No. 91 is not local in character but is a general public improvement, and of no benefit to plaintiffs' properties.

As bearing upon the question of benefit to plaintiffs' properties their expert witness, a real estate agent, testified in substance that the proposed thirty foot slab would not increase the value of residential property. That the bringing of traffic closer to residential properties would increase the hazards to children, dogs and pets, and would naturally hurt the value of the property for residential purposes. He further testified that if stop lights were installed "ever so often" it might not hurt so bad, but opening the road as a highway would constitute a definite hazard and decrease the value of the property.

Defendants' witness, a real estate agent, testified in substance that the State's plan of improvement would take all of Sycamore Street, plus three·and one-half feet along the north side of Liberty Heights Addition between 16th and 20th streets. That the 32 foot separation between the north and south lanes, under the State's plan, would place east bound traffic right in front of plaintiffs' properties. In direct examination he further testified:

"In fact, when the plat was originally filed to Liberty Heights Addition, we were required to dedicate a little extra ground so as not to get too close to the slab before we could obtain any financing, but what we wanted to do with this proposed paving district was to protect that little access road in front."

" * * * It (the City's proposed thirty foot slab) would certainly stabilize the value because there is no activity whatsoever there now because of the threat of the major (State's) plan. If the proposed slab (City plan) was in, it would remove the threat of being so near to the property that we could go ahead and do trading on the road."

"Q. In your opinion, would it enhance or decrease the value of the property along Sycamore Street? A. It would increase it."

On cross-examination he testified:

"Q. How would it increase it? * *. A. All right, its presently zoned for residence; its almost impossible to find anyone interested in buying a piece of property on the south side of the road due to the threat of the over-all planning by the Federal Bureaus and the State Highway Department, whereas, if the proposed slab according to the paving district was in it would remove the threat of having the fast traffic in the front yards and people would go ahead and do some trading. It would certainly stabilize it to where you would say the average property now anywhere else in town would sell for say $9,000.00 would not sell for maybe $6,500.00 or maybe $7,500.00, certainly it would be comparable with other properties due to size and square footage and, of course, there is the chance, or potentially it could be a good business if the proposed slab was added, it would allow those people the difference in the parking of Sycamore plus the amount shown in dirt there for business purposes.

"Q. Well, you know its restricted property until 1965 for residences? A. I understand that. I said 'potentially', I don't know what they will do in the next year. * * *

"Q. You say that your estimate as to enhancing the value of the property is based upon the threat of the state putting in a highway that comes along there to the edge of the paving? A. Yes sir. * * *.

"Q. There has been some retarding in the activities by reason of the threat of putting this 30 foot slab out there and charging it to the property too, hasn't there? A. In my opinion that wouldn't affect the value at all, if they knew that that was all there would be, I think the trading would go along fairly well. It isn't the assessment that is causing it, *its* the threat of speed in front of the property."

This witness further testified that the State's plan of construction would reduce the value of plaintiffs' properties 40% or more.

In Findings of Fact the trial court found:

"Cache Road, or U. S. Highway 62, is a public highway carrying a heavy burden of traffic, of which approximately one-third is through traffic and more than one-fourth are commercial vehicles, the traffic being much more than that on ordinary city streets.

"The construction of the paving under Street Improvement District No. 91 of the City of Lawton would result in no increase in value of plaintiffs' property.

"The present paving on Sycamore Avenue and Cache Road is sufficient for ordinary traffic other than highway traffic.

"General public use for highway purposes of Cache Road has required two additional inches in thickness of concrete over that ordinarily required for city streets."

In Conclusions of Law the trial court found:

"The proposed improvement under Street Improvement District No. 91 of the City of Lawton constitutes a general public improvement rather than a local improvement.

"The proposed improvement under Street Improvement District No. 91 of the City of Lawton confers no benefit on the property of plaintiffs."

In defendants' brief it is argued that the question of benefits to plaintiffs' properties and the question of whether the proposed improvement is local in nature, as distinguished from a public improvement, are legislative in nature and when determined by the City Council such determination is conclusive on the courts. It is argued that this court has so held, citing Missouri K. & T. R. Co. v. City of Tulsa, 45 Okl. 382, 145 P. 398; Newman v. Warner-Quinlan Asphalt Co., 71 Okl. 284, 177 P. 375; Crawford v. Cassity, 78 Okl. 261, 190 P. 412; Missouri, K. & T. R. Co. v. City of Tulsa, 113 Okl. 21, 238 P. 452; and Rawlins v. Warner-Quinlan Asphalt Co., 70 Okl. 309, 174 P. 526. In 11 O.S.1951 § 191 (as re-enacted in 1949) it is provided in part:

"*The determination by the governing body of the property to be assessed* and the amount of benefits shall be conclusive upon the owners of the property assessed and *shall not be subject to review by any court.*" (Emphasis supplied.)

However, in Bragdon v. City of Muskogee, 133 Okl. 224, 271 P. 1006, it was held:

"Before the expense of installing a local improvement can be assessed against property in a district, it is essential that the improvement should confer substantial benefit upon the property within the district. The essential element of a local improvement is that it shall benefit the property upon which the costs are assessed in a manner local in its nature and not enjoyed by the property generally in the city."

And in Crawford v. Cassity, 78 Okl. 261, 190 P. 412, supra, it was said that courts may intervene where there are circumstances of fraud or oppression. In Missouri, K. & T. R. Co. v. City of Tulsa, 113 Okl. 21, 238 P. 452, supra, in holding an assessment valid it was noted that no serious contention was made that the property had not been benefited or would not be benefited. In that case the court concluded that since no constitutional rights had been impaired the legislative determination would not be disturbed. In Baldwin v. City of Lawton, 198 Okl. 585, 185 P.2d 699, it was said that if the improvement is a general public improvement, rather than local in character, the courts will interfere. All of these cases were decided prior to the re-enactment of 11 O.S.1951 § 101, supra.

In the case before us plaintiffs have presented evidence which shows that their properties, being restricted residential properties, will not be benefited by the improvement, and that the proposed improvement is not local in nature. The trial court so found. Defendants produced evidence tending to show that the City plan of construction will be beneficial because it will be less harmful than the State's plan, and will forestall the State's plan. This evidence, if material, overlooks the fact that the State has no plan of construction absent participation by the City in providing additional right of way.

The evidence in the case before us conclusively shows that plaintiffs' properties would not be benefited now, or in the foreseeable future. Since their lots are

restricted to residential purposes and the removal of these restrictions is contingent upon the action of others, it cannot be said that these properties may, within the foreseeable future, be converted to business properties and thus be benefited by the improvement. In 48 Am.Jur. § 28, Special or Local Assessments, the author states:

"It has been ruled that benefit to property from a public improvement to sustain a special or local assessment must be actual, physical, and material, and not merely speculative or conjectural. In order to justify the assessment, the benefit must be substantial, certain, and capable of being realized within a reasonable time. Benefits arising from improvements which depend upon contingencies and future action of public authorities cannot be considered in estimating the assessment, although they may form a part of a general plan for public improvement. * * * Potential utility may be taken into consideration in the light of the use to which the property may reasonably be expected to be put in the future."

"* * * if the use of the land imposed by law is such that it can have no market value, an assessment cannot be levied."

If the trial court had juridiction to determine the questions presented we are of the opinion that it correctly held that the improvement was not a local improvement and that plaintiffs' properties would not be benefited thereby.

Unless plaintiffs had the right to present in the district court, the question of "benefit" to their properties then they have effectively been deprived of any opportunity to present evidence and be heard in any forum on this question. 11 O.S.1951 § 85, provides that when the engineer has submitted plans for the proposed improvement the governing body shall examine the same and if found satisfactory shall by resolution approve the same and declare such improvement necessary. The adoption of such a resolution, it has been held, constitutes a finding that all of the property in the improvement district will be benefited. It also constitutes a finding that the improvement is local in nature as distinguished from a general public improvement. No notice is issued prior to the adoption of the resolution and no opportunity is afforded to present evidence or be heard on the question of "benefit." Courts have indulged the presumption that the governing body made prior appropriate and adequate inquiry and found that all lands included in the district would be specially benefited by the improvement. See Sewer Improvment District No. 1, Tulsa County v. Foster, 205 Okl. 201, 236 P.2d 678. Yet, as heretofore pointed out, the statute makes no provision for a complaining minority group to be heard on these questions. Under our statute, 11 O.S.1951 § 101, supra, the finding of the governing body is not subject to review by any court.

11 O.S.1951 § 86, authorizes a property owner to contest the action of the governing body in approving the plans, profiles, specifications or estimates filed by the city engineer. 11 O.S.1951 §§ 98 and 99 give a property owner an opportunity to be heard on the assessment apportioned against his property and give the governing body the right to raise or lower the assessment as they shall deem just. There is no statutory provision allowing the property owner a hearing on the question of whether his property is benefited at all. However, we held in Baldwin v. City of Lawton, 198 Okl. 585, 185 P.2d 699, that jurisdictional questions could be presented in the manner and within the time provided by Secs. 85 and 86 for contesting the action of the governing body in approving the plans and specifications.

■ It is fundamental that private property cannot be taken for a private or public use without compensation. Art. II, §§ 23 and 24 Oklahoma Constitution. We think these provisions of the constitution are applicable when a city attempts to impose a special assessment against property which will not be benefited by the improvement.

In 48 Am.Jur. § 29, Special or Local Assessments, the author states:

"The question of the existence and extent of special benefit resulting from a public improvement for which a special assessment is made is one of fact, legislative or administrative rather than judicial in character, and the determination of such question by the legislature or by the body authorized to act in the premises is conclusive on the property owners and on the courts, unless it is palpably arbitrary or grossly unequal and confiscatory, in which case judicial relief may be had against enforcement. * * * But the power of the legislature in these matters is not unlimited. There is a point beyond which it cannot go, * * *. It cannot by its fiat make a local improvement of that which in its essence is not such an improvement, and it cannot by its fiat make a special benefit to sustain a special assessment where there is no special benefit."

In the third paragraph of the syllabus in City of Tulsa v. McCormick, 63 Okl. 238, 164 P. 985, it was held:

"An ordinance levying assessments to pay for the cost of constructing certain paving upon the streets of the city of Tulsa which creates arbitrary differences in the property to be assessed without regard to the benefits received and which permits certain property benefited to wholly escape assessment violates section 7, art. 2, Wms. Ann.Const., and the Fourteenth Amendment to the Constitution of the United States."

Art. 10, Sec. 7, Oklahoma Constitution provides:

"The Legislature may authorize county and municipal corporations to levy and collect assessments for local improvements upon property benefited thereby, homesteads included, without regard to a cash valuation."

In the first paragraph of the syllabus in Gilfillan v. City of Bartlesville, 46 Okl. 428, 148 P. 1012, it was held:

"Section 7, art. 10, (Williams' § 272), of the Constitution expressly declares and thus, upon the principle of 'expressio unius est exclusio alterius,' limits to such declaration the legislative power to levy and collect assessments for local improvements upon property benefited thereby.

"(a) The authority here given is based upon the special and peculiar benefits accruing to such property, as contradistinguished from benefits accruing to property in general or to the general public."

Since the evidence in this case clearly shows that the contemplated improvement would be of no benefit to plaintiffs' properties it follows that the imposition of a special assessment against their properties would be oppressive and arbitrary. It is not within the power of the Legislature to authorize, or the City to impose, a special assessment upon properties not benefited. And where, as in this case, the evidence conclusively shows that plaintiffs' properties will not be benefited the courts have jurisdiction to grant appropriate relief notwithstanding the provisions of 11 O.S.1951 § 101, supra. Any former decisions or expressions of this court to the contrary are expressly overruled.

In defendants' brief it is suggested that the action is premature in that no assessments or apportionments have been made. We do not agree. See Baldwin v. City of Lawton, 198 Okl. 585, 185 P.2d 699, supra.

It is contended by defendants that plaintiffs' cause of action was barred by the statute of limitations. The resolution of necessity (11 O.S.1951 § 85) was adopted on December 28, 1956. Sec. 85 provides that the resolution shall be published in six consecutive issues of a daily paper or two issues of a weekly paper. In 11 O.S.1951 § 86, it is provided that any property owner shall have the right to institute an action not later than fifteen days after the publication of the resolution provided for in section 85, supra, to contest the action of the governing body of such city. The record in this case does not show when the resolution was published, if it was published. There being no proof as to when the res-

olution was published we are unable to determine when the fifteen day limitation period started running, or when it ended.

The views herein expressed make it unnecessary for us to pass upon defendants' other assignments of error.

The judgment of the trial court is affirmed.

WELCH, C. J., and DAVISON, WILLIAMS, BLACKBIRD and JACKSON, JJ., concur.

CORN, V. C. J., and HALLEY, JOHNSON and CARLILE, JJ., dissent.

HALLEY, Justice.

I dissent in this case because I think the action is premature. The assessing ordinance has not been passed. There is no question but that there is property in this paving district that will be greatly benefited by the proposed paving district. It is difficult for me to see that an improved street would not benefit all the property in the district, at least to a certain extent. It is to be presumed that the assessing authority would do their job properly. Under Section 108, 11 O.S.1951, the plaintiffs would have fifteen days after the publication of the ordinance levying assessments to bring this action.

In Missouri K. & T. R. Co. v. City of Tulsa, 113 Okl. 21, 238 P. 452, 458, we said:

"* * * The matter of determining the benefits being, as we have seen, a legislative matter, and having been determined by the legislative branch of the city government, and there being no constitutional rights thereby impaired, the courts will not disturb the legislative determination."

The plaintiffs' petition was not filed in the time required by Section 86, 11 O.S.1951, and is too late if this suit is to challenge the sufficiency of Resolution No. 2, Street Improvement District No. 91. See Riedt v. City of McAlester, Okl., 262 P.2d 152.

Under Article X, Section 7 of our Constitution the City of Lawton had the right to levy an assessment because it is a local improvement.

Never before that I am able to find has this Court said that the inclusion of property in an improvement district constitutes a taking or damaging of property under Sections 23 and 24 of Article II of our Constitution and such a holding is not justified.

The passage of the assessing ordinance must of necessity come before the questions here can be properly answered and any effort to do it before is clearly out of time.

I dissent.