Sam G. AMBRISTER et al., Plaintiffs In Error,

v.

CITY OF NORMAN, Oklahoma, a Municipal Corporation, Defendant in Error.

No. 38442.

Supreme Court of Oklahoma.

Sept. 29, 1959.

Looney, Watts, Looney & Nichols, Oklahoma City, Paul W. Updegraff, Norman, for plaintiffs in error.

John M. Luttrell, Person E. Woodall, Norman, for defendant in error.

WELCH, Justice.

This action was commenced by the plaintiffs for injunction to enjoin defendant from proceeding in connection with a street improvement district, which consists of a portion of Main Street of said defendant city, the same being a continuation of State Highway No. 9. The petition for injunction was denied by the trial court, and plaintiffs perfect this appeal.

It is first argued by plaintiffs that the City has no jurisdiction to create a paving district on a part of the State Highway

System without agreement with the State Highway Commission. Sections 49 and 50 of Title 69, and Section 102 of Title 11, O.S.1951, are referred to in support of plaintiffs' argument.

Title 69, Section 49, provides:

"The State Highway Commission shall have authority in its sole discretion to either drain, or grade, or hard-surface, or construct, or maintain any necessary roads, bridges, over-passes and under-passes on any highway, street or alley within the incorporated limits of any city or town which highway, street or alley is a continuation of the State Highway system; provided, that such discretion shall in no event be controlled by any other authority as to the manner or time or place of the exercise of the power herein conferred. This section shall apply with equal force to the hard-surfacing of any county highways by the county commissioners. Laws 1923–24, ch. 48, p. 57, § 13; Laws 1927, ch. 82, p. 126, § 1; Laws 1929, ch. 245, p. 316, § 6; Laws 1931, p. 195, § 1."

Title 69, Section 50 provides:

"Any city or town, through its duly constituted authorities, is hereby authorized and empowered to enter into an agreement with the State Highway Commission, or County Commissioners, as the case may be, to determine the location of such improvement within such town, and for its care and maintenance after construction; provided, that said highways shall be maintained by the State Highway Commission, in the same manner as all other State Highways; and the State of Oklahoma shall have authority, coexistent with such city or town, to make regulations governing the use of said highways, and, together with said city or town, shall have the power to police all such highways, and provide and regulate the erection and placing of proper highway safety devices, lights, signals and signs on such highways. Laws 1923–

24, ch. 48, p. 57, § 14; Laws 1937, p. 374, § 1."

Title 11 O.S.1951 § 102 provides:

"The governing body, in its discretion, may provide for the payment of the cost for improving street intersections and alley crossings out of the general revenue.

"The State Highway Commission is authorized in its sole discretion to enter into agreements with the governing body of any town or city for participation with State Highway Construction and Maintenance Funds in the cost of any improvements on streets which are a part of the State Highway System, and such agreements may provide for the award and supervision of the contract by said City or Town, the State's share of the cost to be due and payable upon completion of the project. As amended Laws 1949, p. 68, § 7a."

Plaintiffs cite City of Lawton v. Akers, Okl., 333 P.2d 520, and Bragdon v. City of Muskogee, 133 Okl. 224, 271 P. 1006.

The decision in the Akers case was based on the proposition that the properties to be assessed would not be benefitted by the improvement proposed by the City, therefore, it is not authority for the questions raised here.

The Bragdon case is not authority for the argument here presented, since it held that the installation of an ornamental street lighting system conferred substantial benefit upon the property within the district of special assessment and therefore injunction against assessment denied.

Section 102, Title 11 O.S.1951, recognizes the authority of a city to improve streets which are a part of the State Highway System, and authorizes the State Highway Commission in its sole discretion to participate in conjunction with the city for such improvements.

Title 11, Section 81, O.S.1957, Supp. which was originally enacted in 1923, and re-enacted as amended in 1953, provides that cities have authority to improve streets, and there is no provision in this section of

the statutes or any other section which prohibits cities from improving streets which are a part of the State Highway System.

■ We are of the opinion that the sections referred to by plaintiffs confer authority on the State Highway Commission to make expenditures to improve streets within a city where they are a part of the Highway System, and also to participate with cities in the improvement of such streets. We do not interpret those sections to mean that a city is prohibited from providing for such improvements without the cooperation or participation by the State Highway Commission.

■ While Title 11, Section 81, O.S. 1957, Supp. does not specifically provide for cities to improve streets which are also considered a part of the State Highway System, it does not prohibit them from so doing. However, when we take into consideration the different statutes passed by the Legislature concerning the improvement of streets and highways, we can come to no other conclusion than that it was the legislative intent that traffic arteries serving a dual purpose as both a street within a city and a portion of highway system may be improved by either the city independently, the Highway Commission independently, or by both jointly.

We would point out that this case involves no conflict of authority as between the City and the State Highway Commission. If such a controversy should arise and find its way into court, all the rules would not necessarily apply there as do apply here where the contest is between the City and a property owner who is seeking to enjoin the City, upon the theory among others, that the City is without authority to proceed with the improvement here contemplated. In many jurisdictions it has been held that where territory not theretofore included in the corporate limits of a city or town is annexed, the public highways and roads located in such annexed territory become streets of the annexed city or town. See City of Wichita Falls,

Texas v. Bowen, 143 Tex. 45, 182 S.W.2d 695, 154 A.L.R. 1434; 25 Am.Jur. p. 54, Sec. 259; The Town of Refugio v. Strauch, Tex.Com.App., 29 S.W.2d 1041; Herbert v. City of Richland Center, 264 Wis. 8, 58 N. W.2d 461.

It is further contended by plaintiffs that certain sections of the statutes under Title 69, O.S.1951, prohibit the City of Norman from providing for special assessments because population falls below population limits set by the Act. We cannot agree with this contention since the proposed improvement by the City of Norman, defendant herein, is not what can be considered as limited access facilities, and Title 69 O.S. 1951, is a special provision pertaining to these facilities only.

It is next contended by plaintiff that the proposed improvement is a general public improvement rather than a local improvement, and assessment of property therefor is a taking without due process of law.

■ Under proper circumstances the widening of the paving on a city street may be a local improvement within the meaning of Section 7, Article 10 of our State Constitution notwithstanding that such street may be a major traffic way. Harrington v. City of Tulsa, 170 Okl. 20, 39 P.2d 120.

■ The general rule is that the necessity of the improvement and the benefit accruing to the property within the improvement district are legislative questions, and having been determined by a city, in its legislative capacity, is conclusive upon the courts. See Missouri, K. & T. R. Co. v. City of Tulsa, 113 Okl. 21, 238 P. 452; Grier v. City of Tulsa, 143 Okl. 244, 288 P. 957; St. Louis-San Francisco R. Co. v. City of Tulsa, 8 Cir., 15 F.2d 960; Seibold v. City of Muskogee, 161 Okl. 241, 17 P.2d 678, and Wright v. City of El Reno, 168 Okl. 594, 35 P.2d 473.

■ The authority of the municipality to tax abutting property for the cost of improvement is dependent upon the existence of two characteristics; 1st, that it is a local improvement within the meaning of our constitutional provisions; 2nd, that

there is public necessity therefor as required by statutory enactment. Title 11, Section 83, O.S.1951. In filing the instant action plaintiffs assumed the burden of pleading and proving the nonexistence of either or both of these requirements, and where the judgment of the trial court, in effect, holds that the proof failed to establish the nonexistence of these jurisdictional facts, and such holding is not against the clear weight of the evidence, said judgment will not be disturbed on appeal. Baldwin v. City of Lawton, 198 Okl. 585, 185 P.2d 699.

■ The plaintiff presents its third and fourth propositions together, contending that more than fifty per cent of the property owners in said paving district protested, and that it was error of the City Commission to permit some of the property owners to withdraw their names from said protest after the protest had been filed with the City Clerk.

Section 85 of Title 11 O.S.1951, provides in part as follows:

"* * * such resolution shall further provide that if the owners of more than one half in area of the land liable to assessment to pay for the improvement of any street, avenue, lane, alley or other public place, or part thereof, included therein, shall not within fifteen (15) days after the last publication thereof, file with the clerk of said city or town their protest in writing against the improvement of such street, avenue, lane, alley or other public place or part thereof, then the city or town shall have the power to cause such improvements to be made and contract therefor and to levy assessments for the payment thereof. * * *"

In due time written protest against this improvement was signed and filed by landowners of the area purporting to be 54.40

percent thereof. The next day a number of such protestants in writing withdrew their names from the protest. The remaining names on the protest represented ownership of no more than thirty-nine percent of the area.

The authorities cited by plaintiffs to support this argument that protestants were not entitled to withdraw their names from protest, are not in point since they all involve petitioners for elections and do not involve street improvement protests.

No Oklahoma authorities are cited by either party in their respective briefs on this question, and we have been unable to find any through our independent research. However, other courts have held that in a proposed improvement district protest, property owners who sign a protest may withdraw their signatures any time during the protest period. Mosher v. City of Phoenix, 25 Ariz. 297, 216 P. 242; Salt Lake & Utah R. Co. v. Payson City, 66 Utah 521, 244 P. 138, and Hawley v. City of Butte, 53 Mont. 411, 164 P. 305.

Plaintiffs do not question but that protests were withdrawn during the period provided for filing same, therefore we are of the opinion that the city commission properly considered the protest and was authorized to permit the withdrawal of signatures, and that in so doing properly found that said protest should be denied, since it did not contain sufficient signatures to constitute more than one-half of the area of the land liable to assessment to pay for the improvement.

In view of the above findings we deem it unnecessary to determine the sufficiency of the protest prior to withdrawals.

Therefore, for the reasons above stated, we are of the opinion and so hold that the trial court be affirmed in its judgment denying the injunction sought by the plaintiffs.

Affirmed.