LEVY OF ASSESSMENT FOR WEATHER MODIFICATION A provision by the Legislature such as that found in 2 O.S. 1423 [2-1423] (1973), for a special assessment for local improvements, creates a presumption that the improvement and assessment authorized will benefit the property so assessed. A question of fact is involved where individual land holders contend that their specific property is not specifically benefitted by the proposed local improvement. Since the Weather Modification Act provides a procedure for the exclusion of property found not to be benefitted from the improvement, the act is constitutionally sufficient on its face. The Attorney General has received your letter in which you request our opinion on the following question: In providing for the levy of assessment for weather modification in 2 O.S. 1423 [2-1423] (1973), et seq., did the Oklahoma Legislature properly exercise the authority given it in Article X, Section 7 of the Oklahoma Constitution? The act to which you refer, the Oklahoma Weather Modification Act, 2 O.S. 1401 [2-1401] (1973) et seq., and particularly 2 O.S. 1423 [2-1423] (1973), provides for a county election at which there is submitted to the electors the question of whether or not an assessment shall be levied for the purposes of funding a weather modification program in the county, or a portion of the county as designated by the county commissioners. Section 2 O.S. 1423 [2-1423] also provides: ". . . The board of county commissioners may exempt areas within municipalities or other areas from the assessment and may contract with such areas to make payments in lieu of assessments. The county commissioners shall exclude from voting the electors in those areas exempt from assessment . . . If a majority of votes are "weather modification — yes", the county commissioners shall, at the time of the annual levy thereunder, levy the assessment." (Emphasis added) Title 2 O.S. 1424 [2-1424] (1973) provides in relevant part that: ". . . The board of county commissioners shall appoint three (3) landowners who are residents of the area to be assessed, to act as appraisers to appraise and apportion the benefits and recommend the assessments to pay for such benefits. For such purpose the appraiser shall use the records of the county assessor. Immediately after the appraisals are completed, they shall file a written report with the board of county commissioners." Further, 2 O.S. 1425 [2-1425] (1973) provides in relevant part: "After an affirmative vote of electors, the commissioners shall appoint a time and place for holding a public hearing to hear any protests concerning the appraisals . . . At the hearing, the board of county commissioners shall have the authority to review and correct said appraisals and shall by resolution confirm the same as so revised and corrected by them. Any person objecting to the appraisal of benefits and assessment of his property as confirmed shall have the right of the appeal to the district court." Article X, Section 7 of the Oklahoma Constitution to which you have referred, provides: "The Legislature may authorize county and municipal corporations to levy and collect assessments for local improvements upon property benefitted thereby, homesteads included, without regard to a cash valuation." Various decisions of the Oklahoma Supreme Court interpreting Article X, Section 7, supra, can be fairly summarized by the first syllabus of the court in Application of Eric Hospital District, Okl., 444 P.2d 216 (1968), as follows: "Special assessments against real property for local improvements can be levied only against the real property specifically benefitted by the improvement involved." As the Court further noted in the body of its opinion: " 'Before the expense of installing a local improvement can be assessed against property in a district, it is essential that the improvement should confer substantial benefit upon the property within the district. The essential element of a local improvement is that it shall benefit the property upon which the costs are assessed in a manner local in its nature and not enjoyed by the property generally . . .' under the general principles applicable to special assessments for local improvements, the assessments must be based upon special benefits to the assessed property from the improvement involved." It is further noted from the opinion of the Court in the Erick Hospital case, supra, that the Court found particularly objectionable that the act there involved, the Hospital District Act of 1967, did not provide a statutory method of determining boundaries of the district, or a method for excluding property from the district which was found not to benefit from the local improvement there proposed. In that regard it is also noted that the Weather Modification Act, supra, in Sections 2 O.S. 1423 [2-1423], 2 O.S. 1424 [2-1424] and 2 O.S. 1425 [2-1425], provide for such adjustments to be made by the county commissioners and their appraisers. A more difficult question is involved in determining whether the modification or attempted modification of weather is a local improvement of such a nature that confers a substantial benefit upon the property assessed, within the meaning of Article X, Section 7 of the Oklahoma Constitution, supra, and the cases construing that section. It is the general rule that whether or not a particular public improvement results in a special benefit to specific property, justifying an assessment against that property is a determination which rests within the sound discretion of the legislative tribunal involved, whether it be state or municipal. See 63 C.J.S. Municipal Corporation, 1375 and 2 O.S. 1420 [2-1420] (1973). The Supreme Court of Oklahoma has followed that view as indicated in the case of Seibold v. City of Muskogee, Okl., 17 P.2d 678. In the body of the Court's opinion it is stated: "At the hearing of the case, plaintiffs offered evidence tending to establish that their property was not benefitted by the pavement. This evidence was by the trial court excluded, and in our opinion properly so. The question of benefit accruing to city property within an improvement district is, as a general rule, legislative, to be determined by the legislative body of the city, and its determination will not be interferred with by the courts. (Citations omitted) . . . We have held that as a general rule the question of the benefits accruing to city property by virtue of improvements made within an improvement district is a legislative question to be determined by the legislative body of the city. We think the rule announced is correct. However, we do not desire to be understood as holding that upon proper pleadings and proof the plaintiffs in error upon a retrial of the case will not be permitted to bring themselves within the exceptions to the general rule. . ." The reasoning of the Court has made it apparent that there is in effect a presumption of benefits to the particular property where the legislative body provides for a special assessment. That presumption may be rebutted when the facts of a particular case are sufficient, and property found not to be benefitted by the proposed public improvement may be excluded from the assessment. See also Harrington v. City of Tulsa, Okl., 39 P.2d 120. These early holdings of our Court were further amplified in the more recent case of City of Lawton v. Akers, Okl., 333 P.2d 520 wherein the Court stated: " 'The question of the existence and extent of a special benefit resulting from a public improvement for which a special assessment is made is one of fact, legislative or administrative rather than judicial in character, and the determination of such question by the legislature or by the body authorized to act in the premises is conclusive on the property owners and on the courts, unless it is palpably arbitrary or grossly unequal and confiscatory, in which case judicial relief may be had against enforcement . . .' Since the evidence in this case clearly shows that the contemplated improvement would be of no benefit to plaintiff's properties it follows that the imposition of a special assessment against their properties would be oppressive and arbitrary." It is, therefore, the opinion of the Attorney General that your question be answered as follows: A provision by the Legislature such as that found in 2 O.S. 1423 [2-1423] (1973), for a special assessment for local improvements, creates a presumption that the improvement and assessment authorized will benefit the property so assessed. A question of fact is involved where individual land holders contend that their specific property is not specifically benefitted by the proposed local improvement. Since the Weather Modification Act provides a procedure for the exclusion of property found not to be benefitted from the improvement, the act is constitutionally sufficient on its face. (Steven E. Moore)