Vaughn NELSON and Ross O. Cubbage for themselves and others similarly situated, Plaintiffs in Error,

v.

PONCA CITY, KAY COUNTY, Oklahoma, a municipal corporation, Defendant in Error.

No. 40855.

Supreme Court of Oklahoma.

May 25, 1965.

Rehearing Denied Nov. 23, 1965.

Raymond A. Trapp, Ponca City, for plaintiffs in error.

C. Marland Johnson, Ponca City, for defendant in error.

BLACKBIRD, Justice.

This appeal involves a proposed special improvement district for the purpose of paving, and otherwise improving, Hartford Avenue, which comprises the southern boundary of the Crawford Park Addition in Ponca City.

Plaintiffs in error, hereinafter referred to as plaintiffs, own real estate in said addition, fronting on Hartford Avenue, in what has been denominated on the plat of said addition as "Blocks 1 and 2." The map below depicts these "Blocks", and one other, in said addition:

After said City's Board of Commissioners passed its resolution of necessity for said improvement in the early part of January, 1963, and, by another resolution later that month, found that no sufficient protest to assessment for the improvement costs had been presented by owners of property subject thereto, to whom notice had been given in accord with the City's charter; and the City Engineer was directed to present plans and specifications, and an estimate of such costs, the Commissioners thereafter established the proposed assessment limits for the improvement district. The northern assessment limit in said addition is indicated by the hashed line running horizontally across Blocks 1, 2 and 4, as shown on the plat. Also, as indicated on the plat, said line is 600 feet north of Hartford Avenue.

In the present action plaintiffs take the position that the owners of lots north of the assessment limit line will derive benefits from the improvement of Hartford Avenue, and that said line should have been placed farther north of said Street, so that the assessments against their properties would not have been as large as the individual assessments will be under the proposed plan. They contend that lower assessments would result if the assessment area was determined in accord with Section 105 of Ponca City's charter, whose claimed material parts read as follows:

" * * *, the City of Ponca City acting by its Board of Commissioners shall have power to assess the whole costs of * * * paving any street * * * against *the property abutting upon the street* * * * upon which such improvements are to be constructed, and shall have the power to fix a lien against such property to secure the payment of the portion of such costs assessed against such property and in apportioning the cost of such improvement against *abutting* property owners, each *quarter block* shall be charged with its due proportion of paving both the front and the side streets on such block, and the alley or alleys therein, together with the area formed by street intersections and alley crossings, which cost shall be apportioned among the lots or subdivisions of such *quarter blocks,* according to the benefit to be assessed to each lot or parcel. *If any portion of the abutting property shall* not be platted into lots or blocks, the Board of Commissioners *shall include such ground in proper quarter block districts* for the purpose of appraisement and assessment as herein provided.

\* \* \* \* \* \*

"provided that * * *, the costs assessed against any property shall be in proportion to the frontage of the property of each owner to the whole frontage of property in such quarter block so ordered to be improved: Provided, that if the application of this rate would, in the opinion of the Board, in particular cases, be unjust or unequal it shall be the duty of the Board to assess and apportion said costs in such proportion as it may deem just and equitable, having in view the special benefits in enhanced value to be received by each owner of such property, and the equities of such owners and the adjustment of such apportionment, so as to produce a substantial equity of benefits received by, and burdens imposed on each owner."

In their petition filed in this case against defendant in error, hereinafter referred to as "defendant", or "defendant city", plaintiff prayed for a declaratory judgment determining that the proposed assessment limits for the subject special improvement district are invalid and contrary to the defendant City's charter, and fixing the proper limits of such assessment, and for such other relief to which they might be entitled.

Defendant's answer contained a qualified general denial, and, in addition, pleaded, among other things, in substance, that the Crawford Park Addition is made up of "acreages", rather than being platted into

proper lots and blocks; that the City charter's section 105, supra, does not define the word "block", and therefore that, under said charter's section 176, the Oklahoma Statutes pertaining to such assessments are controlling. The Answer quoted the last cited charter section as follows:

"All questions arising in administering said city government, and not provided for in this Act, shall be governed by the State law in such cases made and provided."

In addition to facts hereinbefore related, it was stipulated at the trial that "Blocks 1, 2 and 4", supra, " * * * are 2000 feet in depth north and south * * *" and that if only property south of a line extending east and west, at a distance of 600 feet north of Hartford Avenue, is assessed for said Avenue's improvement, as proposed by the defendant City, 4 lots north of said assessment line, *although not being assessed in any amount, will receive "some benefit"* by reason of said improvement, the amount, character, and extent of which "cannot at this time be determined until the improvements have been completed." It was further stipulated, in substance, that if this pattern of assessment is continued in said addition in the future, and when, as and if Willow Avenue is improved, these 4 lots and 4 others will receive "some benefit" from such improvement without being liable for any of the cost of such improvement.

The case was tried solely upon said stipulation of facts and certain exhibits. One of said exhibits showed that the proposed assessments on the property of plaintiffs, and others owning property within 600 feet north of Hartford Avenue, are substantially higher, than if the northern limit of the assessment area was moved farther north to a point halfway between Hartford and Willow Avenues. In entering judgment for defendant at the close of the trial, the court determined that said City's proposed pattern of assessment or "assessment limits" for the Crawford Park Addition was valid, and was neither contrary to said City's charter, nor to the "law of the State of Oklahoma."

Under a single proposition they urge for reversal, plaintiffs first state:

"In support of our argument, we will cite decisions of this Court involving city improvement assessments from the City of Tulsa, and state that *it is agreed that the charter provisions of Ponca City regarding making and paying for street improvements are identical.*" (Emphasis added).

Then they cite, and quote from, Grier v. City of Tulsa, 143 Okl. 244, 288 P. 957, and City of Tulsa v. McCormick, 63 Okl. 238, 164 P. 985, to support their contention that the assessment limitation line in the present case should have been drawn (horizontally across the Crawford Park Addition and parallel with Hartford Avenue) at a distance north of said street half way between it and Willow Avenue.

In its brief, defendant refers to Tulsa's charter as being "identical" to its own " * * * as to the determination of the assessment areas * * *"; but it is obvious that defense counsel does not intend such statement to be taken at its full import, or to be regarded as putting their client in a position of agreeing that its charter contains no provision other than those considered controlling in the cited Tulsa cases. In plaintiffs' reply they appear to recognize this, and to perceive that such an agreement by defendant would be inconsistent with its contention that, by reason of its charter's Section 176, supra, its Board of Commissioners was bound, in the present instance, by a provision of Title 11 O.S.1961, § 101, which appears to be in the nature of a definition of the term "abutting property." It reads:

"All such property within six hundred (600) feet of said improvement shall be deemed to be abutting thereon for purposes of assessment."

Plaintiffs' reply brief says:

"The defendant claims that statute means that on abutting property City can only go back 600 feet. This is inconsistent with that (the) provision

that City shall determine the depth it shall go back.

"We contend the statute means that if a tract though not abutting upon improvement lies within 600 feet of it and is benefitted, it may be assessed."

In view of the wording of defendant's charter's section 105, supra, we cannot uphold plaintiffs' argument. If the quoted statutory definition of "abutting property", is to be given any consideration in this controversy—and plaintiffs appear to concede that it has a proper place in the correct interpretation of the subject Ponca City charter provision (section 105, supra)—then it can only be construed as limiting the power of said City's Board of Commissioners "* * * to assess the whole costs of paving any street * * * against * * * property * * *."

The cited Tulsa cases were decided before section 101, title 11, supra, originally enacted as section 21, chapter 173, S.L.1923 (p. 284) was amended in 1949 by (deleting the provision requiring the inclusion, into quarter-block districts, of abutting property not platted into blocks, to be based *upon the division of such property into blocks three hundred feet* deep and) inserting the "abutting property" definition therein. That no such definition was a factor in any of the cited Tulsa cases is manifest from an examination of the opinions promulgated therein. That the Tulsa city charter did not read exactly like Ponca City's section 105, supra, is indicated by the following excerpt from Grier v. City of Tulsa, supra, 288 P. p. 959:

"It is finally urged by plaintiff that his property * * * does not abut on such improvement. * * * Under some statutes, it is made mandatory on the municipality that property assessed for paving abut on the street paved. All statutes do not so provide. *The charter of the city of Tulsa does not unqualifiedly so provide,* and the rule contended for is therefore without application." (Emphasis added).

We reach an opposite result in the present case, and hold that the only power of as-

sessment conferred upon Ponca City's Board of Commissioners by the plain wording of the first, or opening, sentence of its charter's section 105, supra, is "* * * against the property *abutting* upon the street * * * upon which such improvements are to be constructed * * *". (Emphasis added). As plaintiffs tacitly, or in effect, concede that said charter's section 176, supra, makes the provision of Title 11, section 101, supra, (as to what shall be deemed abutting property) a part of said charter's section 105, we cannot but agree with the trial court that the assessment limit proposed by defendant for improving Hartford Avenue is in accord with said City's charter provisions herein presented, and is not contrary to any laws of this State to which our attention has herein been directed.

The judgment of that court is therefore hereby affirmed.

HALLEY, C. J., and DAVISON, WILLIAMS and BERRY, JJ., concur.

JACKSON, V. C. J., and IRWIN and HODGES, JJ., dissent.